# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER, | Civil Case No. 2:18-cv-15631 |
| Plaintiff, | |
| vs. | Before:  Susan D. Wigenton, U.S.D.J. |
| | Leda D. Wettre, U.S.M.J. |
| UNITED HEALTHCARE INS. CO.; OXFORD HEALTH INS., INC.; OXFORD HEALTH PLANS (NJ), INC.; OXFORD HEALTH PLANS (NY), INC.; BENJAMIN MOORE & CO.; LOEWS HOTELS & RESORTS CORP.; WELLS FARGO CORP.; FAIRLEIGH DICKINSON UNIV.; UNITED HEALTH-CARE SERVICES, INC.; UNITED HEALTH-CARE SERVICES, LLC; AXA ASSISTANCE USA, INC.; and, ABC CORPS. 1-100, | Return Date:  July 1, 2019 |
| Defendants. | **Oral Argument Requested** |

---

# PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION TO REMAND FOR LACK OF JURISDICTION, AND FOR FEES & COSTS

---

Eric D. Katz  |  NJ Atty. No. 016791991
David M. Estes  |  NJ Atty. No.  034532011
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
P: 973-228-9898
F: 973-228-0303
E: ekatz@mazieslater.com
*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION ..........................................................................................1

FACTS ...........................................................................................................4

ARGUMENT ..................................................................................................7

**POINT I** REMOVAL OF THIS ACTION WAS MERITLESS; PLAINTIFF
SHOULD BE AWARDED ATTORNEY'S FEES & COSTS.............................7

**POINT II.  BECAUSE ERISA § 502(a) DOES *NOT* COMPLETELY PREEMPT
PLAINTIFF'S STATE LAW CLAIMS, REMAND IS REQUIRED** .............10

A. Defendants' Burden of Proof ................................................10

B. No ERISA Documents ..........................................................10

C. The *Pascack* Test ...............................................................11

D. Prong 1(A) of *Pascack* ........................................................12

(1) No Proof of Valid, Executed Assignments ...................13

(2) Defendants Failed to Waive or Address the Anti-Assignment Clause ....................15

(3) Defendants' Speculation Proves Nothing.....................17

E. Prong 1(B) of *Pascack* .........................................................22

F. No Preemption of Direct Claims...........................................24

G. Prong 2 of *Pascack* ..............................................................28

(1) The *Memorial Hospital* Rule......................................29

(2) Course of Dealing & Industry Standards ....................34

(3) Independent, Direct Contracts ....................................36

H. The Conclusion .....................................................................39

**POINT III.  THERE IS NO BASIS FOR SUPPLEMENTAL JURISDICTION** .............39

CONCLUSION..............................................................................................40

# TABLE OF AUTHORITIES

## Cases

*Access Mediquip LLC v. UnitedHealthcare Ins. Co.*, 662 F.3d 376 (5th Cir. 2011),
   *aff'd en banc*, 698 F.3d 229 (5th Cir. 2012) .............................................................32

*Adv'd Orthos. & Sports Med. Inst. v. Blue Cross Blue Sh. of N.J.*,
   2018 WL 3630131 (D.N.J. July 31, 2018) ...............................................................34

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) .........................................11,12,28,38

*Aetna Health Inc. v. Srinivasan*, No. A-2035-14, 2016 WL 3525298
   (N.J. App. Div. June 29, 2016) ................................................................................35

*Aetna Life Ins. Co. v. Huntingdon Valley Surgery Ctr.*, No. 13-03101,
   2015 WL 1954287 (E.D. Pa. Apr. 30, 2015) ...........................................................35

*AFN, Inc. v. Schlott, Inc.*, 798 F. Supp. 219 (D.N.J. 1992) .........................................21

*Alessi v. Beracha*, 244 F. Supp. 2d 354 (D. Del. 2003)...............................................10

*Almont Ambulatory Srgy. Ctr. v. UnitedHealth Grp.*, 121 F. Supp. 3d 950
   (C.D. Cal. 2015) .......................................................................................................16

*Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169
   (3d Cir. 2015)........................................................................................................21,22

*Am. Ortho. & Sports Med. v. Indep. Blue Cross Blue Sh.*, 890 F.3d 445
   (3d Cir. 2018) ..........................................................................................................2,15

*Anesth. & Critical Care Spclts. of Palm Beach v. Aetna Health*, 2010
   WL 11596863 (S.D. Fla. 2010) ...............................................................................26

*Atl. Shore Surgical Assocs. v. Horizon Blue Cross Blue Sh. of N.J.*,
   2018 WL 2441770 (D.N.J. May 31, 2018)...............................................................34

*Barnert Hosp. v. Horizon Healthcare Servs.*, 2007 WL 1101443
   (D.N.J. Apr. 11, 2007) ...........................................................................................36,37

*Biomed Pharms., Inc. v. Oxford Health Plans (NY), Inc.*, 775 F. Supp. 2d 730
   (S.D.N.Y. 2011)........................................................................................................23

*Blue Cross of Cal. v. Anesth. Assoc. Med. Grp., Inc.*, 187 F.3d 1045 (9th Cir. 1999) ........25,26,39

*Boro. of W. Mifflin*, 45 F.3d 780, 788 (3d Cir. 1995) ..................................................40

*Cacoilo v. Sherwin-Williams Co.*, 2012 WL 2459409 (D.N.J. June 25, 2012) ...........................34

*CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165 (3d Cir. 2014).................................. *passim*

*Catholic Healthcare W.-Bay Area v. Seafarers Health & Benefits Plan*,
   321 F. App'x 563 (9th Cir. 2008) .....................................................................................31

*Chrustowski v. Cumberland Cnty. Guidance Ctr.*, 2006 WL 3780555
   (D.N.J. Dec. 20, 2006) ......................................................................................................34

*Ctr. for Ortho. & Sports Med. v. Horizon*, 2015 WL 5770385
   (D.N.J. Sept. 30, 2015) .....................................................................................................23

*Cigna v. Amara*, 563 U.S. 421 (2011) ......................................................................................11

*Community Med. Ctr. v. Loc. 464A UFCW Welfare Reimbursement Plan*,
   143 F. App'x 433 (3d Cir. 2005) .............................................................................14,20,22

*Conn. St. Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337
   (11th Cir. 2009)........................................................................................................25,26,31

*Children's Hosp. Corp. v. Kindercare Learning Ctrs., Inc.*, 360 F. Supp. 2d 202
   (D. Mass. 2005)........................................................................................................... 26,32

*Comp. Spine Care v. Oxford Health Ins.*, 2018 WL 6445593 (D.N.J. Dec. 10,
   2018), *denying reconsdr.* 2019 WL 928421 (D.N.J. Feb. 26, 2019 ) ...................12,34

*DeAsencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003)...................................................40

*Dieffenbach v. Cigna*, 310 F. App'x 504 (3d Cir. 2009) .......................................................2,23

*Drs. Reichmister, Becker, Smulyan & Keehn, P.A. v. United Healthcare
   of Mid-Atl., Inc.*, 93 F. Supp. 2d 618 (D. Md. 2000) .....................................................32

*E. Coast Adv'd Plastic Surgery v. Ameri-Health*, 2018 WL 1226104
   (D.N.J. Mar. 9, 2018)........................................................................................................12

*E. Coast Adv'd Plastic Srgy. v. Horizon Blue Cross Blue Sh. of N.J.*,
   2018 WL 6178869 (D.N.J. Nov. 26, 2018) ................................................................34,35

*E. Coast Aesthetic Srgy. v. United Healthcare*, 2018 WL 3201798
   (D.N.J. June 29, 2018) ......................................................................................................15

*Elite Ortho. & Sports Med. v. Cigna Healthcare*, 2017 WL 1905266 (D.N.J. Apr. 20,
   2017), *R&R adopted*, 2017 WL 1902162 (D.N.J. May 8, 2017).....................................32

*Emergency Physicians of St. Clare's v. United Care*, No. 14-404,
  2014 WL 7404563 (D.N.J. Dec. 29, 2014) ........................................................12,22,38

*Emergency Servs. of Zephyrhills v. Coventry Health Care of Fla.*,
  281 F. Supp. 3d 1339 (S.D. Fla. 2017) ...........................................................26

*Encompass Off. Sols. v. Ingenix*, 775 F. Supp. 2d 938 (E.D. Tex. 2011) ......................................26

*Englewood Hosp. & Med. Ctr. v. AFTRA Health Fund*, No. 6–637,
  2006 WL 3675261 (D.N.J. Dec. 12, 2006) .......................................................36

*Enlightened Sols. v. United Behv'l Health*, 2018 WL 6381883
  (D.N.J. Dec. 6, 2018) ...........................................................................16

*Feldman's Med. Ctr. Pharmacy v. CareFirst*, 723 F. Supp. 2d 814 (D. Md. 2010) ....................26

*Fellhauer v. City of Geneva*, 673 F. Supp. 1445 (N.D. Ill. 1987)...................................2

*Forest Ambulatory Surgical Assocs., L.P. v. United Healthcare Ins. Co.*, No. 122916,
  2013 WL 11323600 (C.D. Cal. Mar. 12, 2013) ..................................................31

*Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare
  Tr. Fund*, 538 F.3d 594 (7th Cir. 2008) .....................................................25,26,32

*Garrick Cox M.D. LLC v. Cigna Healthcare*, No. 16-4611, 2016 WL 6877778
  (D.N.J. Oct. 28, 2016), *R&R adopted*, No. 16-4611, 2016 WL 6877740
  (D.N.J. Nov. 21, 2016)........................................................................ *passim*

*Glastein v. Aetna, Inc.*, 2018 WL 4562467 (D.N.J. Sept. 24, 2018) ("*Glastein II*")....................34

*Glastein v. CareFirst Blue Cross Blue Sh.*, 2019 WL 1397488
  (D.N.J. Mar. 28, 2019) ("*Glastein III*") ....................................................31

*Glastein v. Horizon Blue Cross Blue Sh. of Am.,* 2018 WL 3849904 (D.N.J.
  Aug. 13, 2018) ("*Glastein I*") ..............................................................34

*Goldberg v. Schindler Elev. Corp.*, No. 3:17-07147 (D.N.J. Apr. 23, 2018) (Ex. 7)...................25

*Hansen v. Grp. Health Coop.*, 902 F.3d 1051 (9th Cir. 2018) .......................................2,23,24,36

*Healy v. Ratta*, 292 U.S. 263 (1934)...............................................................2

*Hoag Mem'l Hosp. v. Managed Care Admins.*, 820 F. Supp. 1232 (C.D. Cal. 1993)..................31

*Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236 (11th Cir. 2001)...........................14,20

*Horizon Blue Cross Blue Shield of N.J. v. E. Brunswick Surgery Ctr.*,
   623 F. Supp. 2d 568 (D.N.J. 2009) ..................................................................39

*Hospice of Metro Denver, Inc. v. Grp. Health Ins. of Okla., Inc.*, 944 F.2d 752
   (10th Cir. 1991).............................................................................................32

*In Home Health, Inc. v. Prudential Ins. Co. of Am.*, 101 F.3d 600 (8th Cir. 1996).......................32

*In re Ortho. Bone Screw Prods. Liab. Litig.*, 132 F.3d 152 (3d Cir. 1997)....................................3

*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990) ..............................................................35

*Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529 (11th Cir. 1994),
   *cert. denied*, 516 U.S. 930 (1995).................................................................32

*Makwana v. Medco Health Servs.*, 2016 WL 7477755 (D.N.J. 2016) ..........................................40

*Marin Gen. Hosp. v. Modesto & Empire Traction*, 581 F.3d 941 (9th Cir. 2009) .................25,26

*Martin v. Franklin Capital*, 546 U.S. 132 (2005)............................................................................9

*Mazzola v. AmeriChoice of N.J., Inc.*, No. 13-429, 2013 WL 6022345
   (D.N.J. Nov. 13, 2013)...................................................................................40

*Mbody Minimally Invasive Surgery, P.C. v. United Healthchoice HMO, Inc.*, No. 13-6551,
   2016 WL 2939164 (S.D.N.Y. May 19, 2016) ..............................................16

*MC1 Healthcare v. United Grp.*, 2019 WL 2015949 (D. Conn. May 7, 2019)...........................16

*McCall v. Metro. Life Ins. Co.*, 956 F. Supp. 1172 (D.N.J. 1996)..........................................31,32

*McCulloch Ortho. Surgl. Servs., PLLC v. Aetna Inc.*, 857 F.3d 141 (2d Cir. 2017) ............. *passim*

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) .......................................................................35,36

*MedWell, LLC v. CIGNA Healthcare of N.J., Inc.*, No. 13-3998,
   2013 WL 5533311 (D.N.J. Oct. 7, 2013)...................................................... *passim*

*Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir. 1990).........................30

*Merrick v. UnitedHealth Grp.*, 175 F. Supp. 3d 110 (S.D.N.Y. 2016)...........................................16

*MHA v. Empire Healthchoice HMO*, 2018 WL 549641 (D.N.J. Jan. 25, 2018) .................. *passim*

*N. Jersey Spine Grp. v. Blue Cross & Blue Shield of Mass.*, 2018 WL 2095174
    (D.N.J. May 7, 2018) ...................................................................................................32

*N.J. Spinal Med. & Surgery, P.A. v. Aetna Ins. Co.*, No. 09-2503,
    2009 WL 3379911 (D.N.J. Oct. 19, 2009) ("*N.J. Spinal*")...................................19,20

*N.J. Spinal Med. & Surgery PA v. IBEW Loc. 164*, No. 11-5493,
    2012 WL 1988708 (D.N.J. May 31, 2012) ("*IBEW*") .........................................12,19

*Newark Beth Israel*, 2006 WL 2830973 (D.N.J. Sept. 29, 2006) ...................................37

*NJBSC v. Aetna, Inc.*, 801 F.3d 369 (3d Cir. 2015)..................................................20,21

*NJBSC v. Aetna Life Ins. Co.*, No. 16-1544, 2017 WL 659012
    (D.N.J. Feb. 17, 2017), *R&R adopted*, 2017 WL 1055957 (D.N.J. Mar. 20, 2017)........... *passim*

*NJBSC v. MultiPlan*, 2018 WL 6592956 (D.N.J. Dec. 14, 2018) ....................................3,4,33,35

*N. Jersey Ctr. for Surgery, P.A. v. Horizon Blue Cross Blue Shield of N.J., Inc.*,
    No. 07-4812, 2008 WL 4371754 (D.N.J. Sept. 18, 2008) .................................... *passim*

*N.Y.S. Conf. of Blue Cross & Blue Sh. Plans v. Travelers Ins. Co.*,
    514 U.S. 645 (1995).................................................................................................35,36

*Pascack Valley Hosp., Inc. v. Loc. 464A UCFW Welfare Reimbursement
    Plan*, 388 F.3d 393 (3d Cir. 2004), *cert. denied*, 546 U.S. 813 (2005) .............................. *passim*

*Peterson v. Cigna Ins. Co.*, No. 14-03818, 2014 WL 4054120 (D.N.J. Aug. 15, 2014)..........31,32

*Premier Health Ctr., P.C. v. UnitedHealth Grp.*, 292 F.R.D. 204 (D.N.J. 2013) ........................23

*Premier Health Ctr., P.C. v. UnitedHealth Grp.*, 2012 WL 1135608
    (D.N.J. Apr. 4, 2012) ......................................................................................................16

*Progressive Spine & Orthos. v. Anthem Blue Cross Blue Sh.*, 2017 WL 4011203
    (D.N.J. Sept. 11, 2017) ("*Progressive*") ................................................................

*Progressive Spine & Ortho., LLC v. Empire Blue Cross Blue Sh.*, No. 16-01649,
    2017 WL 751851 (D.N.J. Feb. 27, 2017) ...............................................................25,32

*Rahul Shah, M.D. v. Horizon Blue Cross Blue Shield*, No. 15-8590,
    2016 WL 4499551 (D.N.J. Aug. 25, 2016) ................................................................24

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941).........................................10

*SLF No. 1, LLC v. Unitedcare Servs. Inc.*, No. 2:12-00070, 2014 WL 518222

(M.D. Tenn. Feb. 7, 2014) .................................................................................32

*Small v. Anthem Blue Cross Blue Sh.*, 2019 WL 1220322
(D.N.J. Mar. 15, 2019) ...............................................................................31

*Somerset Ortho. Assocs., P.A. v. Aetna Life Ins. Co.*, No. 06-867,
2007 WL 432986 (D.N.J. Feb. 2, 2007) ................................................16,23

*State Farm Indem. v. Fornaro*, 227 F. Supp. 2d 229 (D.N.J. 2002).......................................11,21

*Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006
(3d Cir. 1987).........................................................................................3,4,10

*Temple Univ. Hosp., Inc. v. Oxford Health Plans*, 2006 WL 1997424
(E.D. Pa. July 13, 2006)...............................................................................16

*The Meadows v. Employers Health Ins.*, 47 F.3d 1006 (9th Cir. 1995) ......................................32

*Thomas R. Peterson, M.D. PC v. Cigna Health & Life Ins. Co.*, 2018
WL 3586273 (D.N.J. July 25, 2018)..............................................................8

*Spinedex Phys'l Therapy USA v. United Healthcare of Ariz.*, 770 F.3d 1282
(9th Cir. 2014), cert. denied, 136 S. Ct. 317 (2015) .................................16

*Univ. Spine Ctr. v. United Healthcare*, 2018 WL 4089061 (D.N.J. Aug. 27, 2018)....................16

*Univ. Spine Ctr. v. United Healthcare*, 2018 WL 2332204 (D.N.J. May 23, 2018) ....................16

*UPMC Presby Shadyside v. Whirley Indus.*, 2005 WL 2335337
(W.D. Pa. Sept. 23, 2005) ......................................................................34,37

*USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190 (3d Cir. 2003), *cert. denied*,
541 U.S. 903 (2004).............................................................................3,11,21

*Vaimakis v. Unitedcare/Oxford*, No. 07-5184, 2008 WL 3413853
(D.N.J. Aug. 8, 2008)...........................................................................13,14,20

**Statutes**

28 U.S.C. § 1447(c) ........................................................................................7,9

ERISA § 502, or 29 U.S.C. § 1132 ........................................................ *passim*

ERISA § 514 ..............................................................................................30,35

**Rules**

Fed. R. Civ. P. 11 .............................................................................................15

Fed. R. Civ. P. 21 .............................................................................................39

**Other Authority**

Toutant, *State's Federal Judge Shortage Deepens with Departure of Jose Linares*
 (NJLJ May 16, 2019) ......................................................................................9

Bayles, *Crisis to Catastrophe: As Judicial Ranks Stagnate, 'Desperation' Hits the Bench*
 (Law360 In-Depth Mar. 2019) .......................................................................9

Sherman, *A shortage of N.J. judges and no nominees by Trump. Why?*
 (NJ Adv. Media Feb. 18, 2018) ......................................................................9

## **INTRODUCTION**

Plaintiff North Jersey Brain & Spine Center ("NJBSC") moves to remand this healthcare action for lack of subject-matter jurisdiction, and for fees and costs. NJBSC is a medical practice that rendered neurosurgical services to patients insured by health plans sponsored, funded or administered by defendants. Because defendants grossly underpaid for the services rendered, NJBSC filed this action asserting direct claims based on independent duties arising from New Jersey law.

The United defendants[1] removed this action, claiming it is completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). United's removal pleading is meritless. There is no ERISA removal jurisdiction here for the precise reasons this Court has remanded prior improper removals, *e.g.*, *MHA v. Empire Healthchoice HMO*, 2018 WL 549641 (D.N.J. Jan. 25, 2018) (**Wigenton**, J.); *Garrick Cox M.D. v. Cigna Healthcare*, 2016 WL 6877778 (D.N.J. Oct. 28, 2016) (**Wettre**, J.), *R&R adopted*, 2016 WL 6877740 (D.N.J. Nov. 21, 2016) (**Wigenton**, J.). Ignoring the Court's on-point holdings, United relies on generic platitudes regarding the breadth of ERISA preemption. But it has limits.

> A federal court's jurisdiction under the removal statutes constitutes an infringement upon state sovereignty. Consequently, the statutory provisions regulating removal must be strictly applied…. It follows,

---

[1] "United" refers collectively to defendants United Healthcare Ins. Co., Oxford Health Ins., Inc., Oxford Health Plans (NJ), Inc., Oxford Health Plans (NY), Inc., United Healthcare Services, Inc. and United Healthcare Services, LLC.

> then, that federal jurisdiction over cases removed from state court
> should be rejected where the propriety of removal is doubtful.

*Fellhauer v. City of Geneva*, 673 F. Supp. 1445, 1447 (N.D. Ill. 1987). "Due regard for the rightful independence of state governments...requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the [removal] statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270 (1934). To override NJBSC's Complaint and choice of forum, United must satisfy the *Pascack* test.  But it cannot.

First, NJBSC is not the type of party who can sue under ERISA § 502(a). The removal pleading fails to attach valid, executed assignments for each patient. *Pascack Valley Hosp. v. Loc. 464A UCFW Welf. Rebrmt. Plan*, 388 F.3d 393, 396, 404 (3d Cir. 2004). It is also **misleading** for United to argue NJBSC has standing, when it has represented to prior federal courts that its anti-assignment provisions void *ab initio* assignments. *See Am. Ortho. & Sports Med. v. Indep. Blue Cross Blue Sh.*, 890 F.3d 445, 453 (3d Cir. 2018). More still, defendants' pleading fails to articulate what ERISA "replacement" claim exists for plaintiff's 8 causes of action. *Dieffenbach v. Cigna*, 310 F. App'x 504, 508 (3d Cir. 2009); *Hansen v. Grp. Health*, 902 F.3d 1051, 1057-58 (9th Cir. 2018). Nor did United tackle whether the one assignment it has is broad enough to provide ERISA standing for the types of claims in the Complaint. *CardioNet v. Cigna Health*, 751 F.3d 165, 178 (3d Cir. 2014).

Second, defendants cannot show that their conduct did not implicate independent legal duties. For instance, United's false representations and conduct

during the pre-approval process gives rise to duties independent of an ERISA plan, under the *Memorial Hospital* rule. *McCulloch Ortho. Surgl. Servs. v. Aetna*, 857 F.3d 141, 150-151 (2d Cir. 2017). Similarly, when the crux of a health dispute is over the <u>amount</u> of reimbursement (rather than existence of coverage), there is no preemption. *CardioNet*, 751 F.3d at 177-78. Disputes arising from direct agreements between a health provider and insurer are also beyond the reach of ERISA preemption. *Pascack*, 388 F.3d at 402; *NJBSC v. MultiPlan*, 2018 WL 6592956, at *7-8 (D.N.J. Dec. 14, 2018).

"A federal court can only exercise that power granted to it by Article III of the Constitution and by the statutes enacted pursuant to Article III. If a case, over which the court lacks subject matter jurisdiction, was…removed from state court, it must be remanded." *In re Ortho. Bone Screw Prods. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997). United is limited to the jurisdictional bases and facts within the four corners of the removal pleading. *USX v. Adriatic Ins. Co.*, 345 F.3d 190, 205 (3d Cir. 2003). And its speculative and conclusory allegations fall far short of dispelling "all doubts" regarding jurisdiction. *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987). The "possibility–or even likelihood–that ERISA's pre-emption provision, may pre-empt [a provider's] state law claims is not a sufficient basis for removal." *Pascack*, 388 F.3d at 398. In sum, this case should be remanded, and plaintiff awarded fees and costs awarded. 28 U.S.C. § 1447(c).

# FACTS [2]

"Plaintiff North Jersey Brain & Spine Center ('NJBSC') is a medical practice specializing in neurosurgical procedures and treatment" and "was an out-of-network, or non-participating, healthcare provider with respect to defendants, and provided emergency and/or pre-approved, medically necessary surgical and related medical services" to about two dozen patients. *See* Compl. ¶¶ 2-3 (Ex. A of D.E. 1).

Defendants United Healthcare Ins. Co., United Healthcare Services, Inc., United HealthCare Services, LLC, Oxford Health Ins., Oxford Health Plans (NJ) and Oxford Health Plans (NY) ("United defendants") are insurance companies that "sponsored, funded, operated, controlled and/or administered healthcare plans" of the patients. *Id*. ¶¶ 4-7, 12-13. Defendants Benjamin Moore & Co., Loews Hotels & Resorts, Wells Fargo, Fairleigh Dickinson University and AXA Assistance USA ("Plan defendants") are health benefit plans, who also "sponsored, funded, operated, controlled, and/or administered healthcare plans" for some patients. *Id*. ¶¶ 8-11, 14.

Between February 2015 to January 2018, NJBSC rendered medical services to 27 patients over 47 dates of service, detailed in in the Disputed Claims List ("DCL"). *Id*. ¶ 21. Defendants underpaid plaintiff for the services rendered. *Id*. For example, NJBSC expected payment consistent with the following:

---

[2]    Standard: the procedural posture requires that all allegations in the Complaint be presumed to be true and all favorable inferences be given to plaintiff. *MultiPlan*, 2018 WL 6592956, at *2 n.4; *Steel Valley*, 809 F.2d at 1010 (3d Cir. 1987).

- Defendants' representations during **pre-approval**[3] of the surgical services rendered, whether directly of via an agent;

- The **course of dealings** of plaintiff and defendant(s) relating to reimbursement for emergency services, including for instance, as evidenced by defendants' statements that plaintiff was forbidden from balance billing patients, and as informed by New Jersey's healthcare statutes and regulations; and,

- Other direct representations and conduct by defendant(s), including reneging on a **post-service agreement** to resolve a dispute over reimbursement (Patient A.F.), or entering into a **PPO**[4] **contract** involving placement of a MultiPlan logo on the patient's insurance card and reimbursement at the PPO contract's rate (Patient P.P.).

*See* Compl., ¶¶ 21-26, 29, 32, 34, 36-39, 44-49, 62-69, 76-79, 88-93.[5]

Significantly, this action "addresses defendants' failure to provide the appropriate *amount* of coverage to the patient and defendants' failure to properly *reimburse* plaintiff for its services to that patient. There is **no dispute that defendants' plan provides coverage for the patients and claims contained in the DCL, as defendants already issued partial payments**." *Id*. ¶ 41 (bold added). In short, this action is <u>not</u> a so-called "coverage dispute." *Id*. ¶¶ 28, 41.

---

[3]     The terms pre-approval, pre-verification, pre-authorization and pre-certification refer to the process in the healthcare industry by which "[p]rior to plaintiff rendering the subject services, defendants were contacted to confirm whether there was health insurance coverage for the services to be rendered by plaintiff and/or to verify the payment terms." *See* Pl. Compl. ¶¶68-69.

[4]     "PPO" is a Preferred Provider Organization, a medical care arrangement by which medical providers render services to certain patients at pre-agreed rates.

[5]     Defendants are liable for interest on the unpaid claims, and owe other duties, pursuant to New Jersey healthcare statutes and regulations. *E.g.*, *id*. ¶¶ 30, 96-100.

Rather, NJBSC has rendered the highest quality emergency and pre-approved neurosurgical services to dozens of patients, yet defendants refuse to make proper payment, and now attempt to unlawfully saddle patients with significant underpaid medical bills, which should have been paid by defendants. *See id*. ¶¶ 21, 34-36, 46-47, 62-63, 83-85.  Because of defendants' (mis)representations, course of conduct and dealings, and other acts, NJBSC filed suit on August 30, 2018 in New Jersey Superior Court asserting eight counts under New Jersey statutory and common law.

The United defendants improperly removed this action on November 2, 2018,[6] asserting complete preemption premised on the following allegations:

- "One of more" of the 27 patients was a "beneficiary of or participants in employee welfare benefit plans…governed by [ERISA]";

- Plaintiff "received assignments for one or more" of the 27 patients;

- The "Court must examine the ERISA plan documents" and "interpretation of the plan documents forms an essential part of the state law claims…."

*See* Not. Removal, ¶¶ 10-11, 21-22 (D.E. 1). However, the referenced "ERISA plan documents" were <u>not</u> attached to the removal pleading. *Id*. The pleading also failed to address defendants' standard anti-assignment provision(s). *Id*.

---

[6]    The Plan defendants are also bound by United's removal petition because they are represented by the same attorneys as United, they consented to United's removal, and declined to file their own removal pleading(s) within the permitted time.

**ARGUMENT**

**POINT I**

**REMOVAL OF THIS ACTION WAS MERITLESS; PLAINTIFF SHOULD BE AWARDED ATTORNEY'S FEES & COSTS**

Defendants' knee-jerk removal of this action is meritless on its face. Health insurers systematically remove all state healthcare actions to federal court -- regardless of the unique allegations in a complaint -- as a means of delaying litigation on the merits, and to increase the litigation costs on healthcare providers. The only way to deter this practice is for courts to impose "costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

To avoid unnecessary delays and costs, plaintiff requested the Court enter an Order to Show Cause, bringing to defendants' attention this Court's prior decisions unequivocally showing removal was improper here. *See* Pl. 3/6/19 Ltr. (D.E. 7). For example, the Hon. Susan D. Wigenton, U.S.D.J. remanded a virtually-identical complaint, drafted and filed by undersigned counsel, holding that:

> [Plaintiff-provider] MHA is neither a participant nor a beneficiary as defined by ERISA. **Because MHA is a third-party provider and disclaims any attempt to assert the rights of the patients it treated, <u>MHA does not have standing to bring suit under Section 502(a)</u>**.
>
> * * *
>
> **The Complaint specifically pleads that no claims arise from "an assignment of benefits from the patient"**…. Defendants challenge this assertion by filing what they say is a valid assignment between MHA and one patient…and argues that MHA routinely enters into such assignments and is likely to have done so here.… **This Court**

7

> **is not in a position to ascertain the validity of the alleged assignment**…**particularly where** [**the provider**] **has chosen not to bring a claim as an assignee**.
>
> \* \* \*
>
> Even if Plaintiff had standing, its claims are not the type permissible under Section 502(a)…. [The provider] seeks to assert rights as a third-party provider for payment. **Disputes over the <u>amount</u> of reimbursement are not preempted by ERISA**.
>
> \* \* \*
>
> …Plaintiff's claims appear to be supported by legal duties independent of ERISA…. [I]f the state law claim is not derived from, or conditioned upon, the terms of an ERISA plan, and [n]obody needs to interpret the plan to determine whether that duty exists, then the duty is independent. MHA claims that Defendants provided it with independent assurances regarding payment for services it provided. This is sufficient at this stage of the proceedings to allege legal duties distinct from an ERISA plan.

*MHA*, 2018 WL 549641, at \*3, n.3, n.4 (citations & quot. marks omitted; emph. added). This Court in *MHA* cited *Garrick Cox*, 2016 WL 6877778 (**Wettre**, J.), *R&R adopted*, 2016 WL 6877740 (**Wigenton**, J.), where this Court held once again that:

> A duty is considered to be independent if it is not based on an obligation under an ERISA plan, or if it would exist whether or not an ERISA plan existed…. [T]he mere fact that the claim is factually possible only in light of the existence of an ERISA plan does not…establish preemption.
>
> \* \* \*
>
> The Court…has no basis to discount completely Plaintiff's allegation that its claims are premised on distinct agreements with Defendant independent of underlying ERISA plans… The Complaint…adequately alleges legal duties distinct from any ERISA plan, and it is premature to address arguments regarding the merit of these allegations.

*Id*. at \*3-4 (citations & quot. marks omitted; emph. added). *Accord Thomas R. Peterson, M.D. v. Cigna Health & Life Ins. Co.*, 2018 WL 3586273, at \*2–3 (D.N.J. July 25, 2018) (**Wigenton**, J. remanding; following *Garrick*). So too here.

It is no secret that the jurists of the District of New Jersey are some of the busiest in the federal judiciary.[7] In no small part, the managed care industry's playbook of blind removal of all health actions contributes to the volume of cases pending in this District. Here the Courts prior decisions--*MHA*, *Garrick* and *Peterson*--make it clear that there is no jurisdiction. Yet, in response to plaintiff's letter (D.E. 7), United forced plaintiff, and the Court, to incur the time and costs associated with full-blown motion practice. Thus, plaintiff requests that, if this Court grants remand, that order "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

> Congress thought fee shifting appropriate in some cases. The process of removing a case to federal court and then having it remanded back to state court <u>delays resolution</u> of the case, <u>imposes additional costs</u> on both parties, and <u>wastes judicial resources</u>. **Assessing costs and fees on remand reduces the <u>attractiveness of removal</u> as a method for delaying litigation and imposing costs on the plaintiff**. The appropriate test for awarding fees…should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party….

*Martin v. Franklin Capital*, 546 U.S. 132, 140–41 (2005) (citations & quot. marks omitted; emph. added). Here, there was no objectively reasonable basis to remove.

---

[7]     *See* Toutant, *State's Federal Judge Shortage Deepens with Departure of Jose Linares* (NJLJ May 16, 2019); Bayles, *Crisis to Catastrophe: As Judicial Ranks Stagnate, 'Desperation' Hits the Bench* (Law360 Mar. 2019); Sherman, *A shortage of N.J. judges and no nominees by Trump. Why?* (NJ Adv. Media Feb. 18, 2018).

And the defense was provided a <u>second opportunity</u> to avoid delaying resolution on the merits, imposing additional costs on plaintiff, and wasting judicial resources by way of the Court's May 21st telephonic status conference addressing these issues. Undaunted, United has pushed forward despite this Court's clear decisions in *MHA* and *Garrick* remanding. So, attorney's fees and costs should be awarded.

**POINT II**

**BECAUSE ERISA § 502(a) DOES *NOT* COMPLETELY PREEMPT PLAINTIFF'S STATE LAW CLAIMS, REMAND IS REQUIRED**

**A.    Defendants' Burden of Proof**

At this posture, defendants bear a heavy burden of proof: "removal jurisdiction is…strictly construed, requiring remand to state court <u>if any doubt</u> exists over whether removal was proper. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941)." *Alessi v. Beracha*, 244 F. Supp. 2d 354, 356 (D. Del. 2003) (emph. added); *Steel Valley*, 809 F.2d at 1010 ("removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand"). United "bears the burden of proving that Plaintiff's claim is truly an ERISA claim." *Pascack*, 388 F.3d at 401–02. Here, the removal pleading fails to dispel "all doubts."

**B.    No ERISA Documents**

Out of the gate, this removal stumbles. United failed to identify any <u>specific</u> patient plan that was (allegedly) formed under ERISA. Like *MHA*, here the Complaint circumscribes NJBSC's claims to non-derivative, direct action arising

10

from duties independent of ERISA. *Compare* Compl. ¶¶ 38-41, *with* 2018 WL 549641, at *3. United's vague allegation that "one or more" of the plans was formed under ERISA, *see* Not. Removal, ¶ 10, is insufficient. *See USX*, 345 F.3d at 205 (3d Cir. 2003) (cannot add "new jurisdictional facts" or new "basis of jurisdiction"); *State Farm Indem. v. Fornaro*, 227 F. Supp. 2d 229, 240-41 (D.N.J. 2002) ("new grounds for removal jurisdiction may not be added and missing allegations may not be furnished"). Because the defense conspicuously avoided specifying which specific patient plan involves ERISA, and also neglected to submit <u>actual</u> proof there is an ERISA plan, this action should be summarily remanded.[8]

## C.    **The *Pascack* Test**

The Third Circuit established the two-prong *Pascack* test: "Under the 'well-pleaded complaint' rule, the plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim." *Pascack*, 388 F.3d at 398 (3d Cir. 2004). An "action may be removed if it falls within the <u>narrow class</u> of cases to which the doctrine of 'complete pre-emption' applies." *Id*. at 399 (emph. added) (citing *Aetna Health v. Davila*, 542 U.S. 200 (2004)). "Accordingly, [a] case is removable only if (1) the [plaintiff] could have brought its

---

[8]    United cannot substitute Summary Plan Descriptions for "ERISA plan documents"; an "SPD is separate from a plan, and cannot amend a plan unless the plan so provides." *Cigna v. Amara*, 563 U.S. 421, 446 (2011) (Scalia, J., concurring).

breach of contract claim under [ERISA] § 502(a), **and** (2) no other legal duty

supports the [plaintiff's] claim." *Id*. at 400 (e.a.) (citing *Davila*, 542 U.S. at 211-12).

> The first prong of this analysis…requires courts to determine: "1(a)
> Whether the plaintiff is the type of party that can bring a claim pursuant
> to Section 502(a)(1)(B), **and** 1(b) whether the actual claim that the
> plaintiff asserts can be construed as a colorable claim for benefits…."

*Comp. Spine Care v. Oxford Health Ins.*, 2018 WL 6445593, at *2 (D.N.J. Dec. 10,

2018) (quoting *E. Coast Adv'd Plastic Srgy. v. Ameri-Health*, 2018 WL 1226104, at

*2 (D.N.J. Mar. 9, 2018)); *Prog. Spine & Orthos. v. Anthem*, 2017 WL 4011203, *5

(D.N.J. Sept. 11, 2017) ("*Progressive*"); *MHA*, 2018 WL 549641, at *2.

## D.     **Prong 1(A) of *Pascack***

United's removal pleading fails to satisfy the Prong 1(A). The court has

jurisdiction "only if" NJBSC "could have brought [its] claim[s] under ERISA," and

"the absence of an assignment is dispositive" *Pascack*, 388 F.3d at 396, 404.

Accordingly, courts remand healthcare disputes where, like here, the removal

petition lacks executed, valid and enforceable assignments. *E.g.*, *NJBSC v. Aetna

Life Ins.*, 2017 WL 659012, at *3-5 (D.N.J. Feb. 17, 2017), *R&R adopted*, 2017 WL

1055957 (D.N.J. Mar. 20, 2017) ("Aetna has failed to demonstrate, at least with

respect to four of the patients, valid assignments that would confer standing").[9] The

---

[9]     *E.g.*, *Emergency Phyns. of St. Clare's v. United Healthcare*, 2014 WL
7404563, at *3-5 (D.N.J. Dec. 29, 2014); *MedWell*, 2013 WL 5533311, at *4; *N.J.
Spinal Med. & Surgery v. IBEW Loc. 164*, 2012 WL 1988708, at *2 (D.N.J. May 31,

same outcome follows here because: (1) United lacks a valid, executed assignment for all the patients, except Patient W.M.; (2) defendants' plans contain a boilerplate anti-assignment provision, which United regularly asserts invalidates *ab initio* assignments, such as Patient W.M.'s; and (3) United's reliance on claim forms cannot substitute for actual proof of ERISA standing.

**(1)  No Proof of Valid, Executed Assignments**

For 96% of the patients (26 of 27) and dates of service (45 of 47) in the Complaint, United has no Assignment of Benefits ("AOBs"). *See* Not. Removal, ¶ 16, Ex. F. The Third Circuit holds that "the absence of an assignment is dispositive of the complete pre-emption question." *Pascack*, 388 F.3d at 396, 404 (emph. added). The Third Circuit in *Pascack* held it is reversible error to deny remand to the plaintiff-hospital when there is an absence of actual evidence of valid assignments:

> …[T]here is nothing in the record indicating that [the patients] did, in fact, assign any claims to the Hospital.
>
> * * *
>
> [T]he record contains no evidence of an express assignment, whether oral or written, from either [patient] to the Hospital.
>
> * * *
>
> Nor can we find an actual assignment based on any other documents in the record.
>
> * * *
>
> Therefore, the Plan cannot demonstrate that the Hospital has standing to sue under § 502(a). As a result, the Hospital's state law claims could not have been brought under the scope of § 502(a) and are not completely pre-empted by ERISA.

---

2012); *N. Jersey Ctr. for Surgery v. Horizon Blue Cross Blue Sh. of N.J.*, 2008 WL 4371754, at *7 (D.N.J. Sept. 18, 2008); *Vaimakis*, 2008 WL 3413853, at *4.

388 F.3d at 400-02 (citations, paren. & fns. omitted).

> In the <u>absence of proof of an express valid assignment, [the provider]</u>
> <u>would not have standing</u> to bring the claims and therefore this matter
> would be remanded. *Pascack*, 388 F.3d at 401; *Cmty. Med. Ctr. v. Loc.*
> *464A UFCW Welf. Rebrmt.Plan*, 143 F. App'x 433, 436 (3d Cir. 2005)
> (finding that "failure to establish that an appropriate assignment exists
> is fatal to standing"); *Hobbs v. Blue Cross Blue Sh. of Ala.*, 276 F.3d
> 1236, 1242 (11th Cir. 2001) (stating, "[w]ithout proof of an assignment,
> the derivative standing doctrine does not apply").
>
>               * * *
>
> To sustain federal jurisdiction based on derivative standing, [removing
> <u>defendant] would have to provide evidence of a valid executed</u>
> <u>assignment</u> by a plan participant. 143 F. App'x at 435. Without proof
> of the assignment the Court is unable to determine the scope of
> assignment and hence determine whether there is federal jurisdiction.

*N. Jersey Ctr. for Srgy. v. Horizon Blue Cross Blue Sh. of N.J.*, 2008 WL 4371754,
at *7-8 (D.N.J. Sept. 18, 2008) (citations & parens. omitted; emph. added).[10]

      Here, like in *Pascack*, *N. Jersey Ctr.*, and *Vaimakis*, United's removal omitted
"actual proof" of a "valid executed assignment" with respect to all, but one, of the
patients. Vague allegations that there are "one or more" AOBs for unspecified
patients is insufficient. *See N. Jersey Ctr.*, 2008 WL 4371754, at *7-8 ("vague
language does not indicate…with any clarity the type of assignment that was
purportedly made"). In sum, defendants have not adduced AOBs for 96% of the

---

[10]    *E.g.*, *Vaimakis v. United Healthcare/Oxford*, 2008 WL 3413853, at *4 (D.N.J.
Aug. 8, 2008) ("without <u>actual proof</u> of the assignment, the Court cannot find federal
jurisdiction"); *MedWell*, 2013 WL 5533311, at *3 (remanding where "Defendant has
not provided any assignment"). "<u>Without proof</u> of an assignment, the derivative
standing doctrine does not apply." *Hobbs*, 276 F.3d at 1242 (emph. added).

patients and services at issue in the Complaint. It was clearly improper of United to remove the lion's share of claims and causes of action relating to these 26 patients. This portion of the action should be summarily remanded, and fees awarded.

**(2) Defendants Failed to Waive or Address the Anti-Assignment Clause**

United has submitted a single assignment for Patient W.M. *See* Ex. F of Not. Removal. However, the claims for Patient W.M. should also be remanded because United failed to establish that there is no anti-assignment clause, or to repudiate its standard anti-assignment clause. The Third Circuit confirmed "that anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable." *Am. Ortho.*, 890 F.3d at 453. So, if Patient W.M.'s plan has an anti-assignment clause, the AOB submitted may not provide NJBSC standing under ERISA. *See Progressive*, 2017 WL 4011203, at *1 (McNulty, J. explaining litigation strategy of managed care industry is to use anti-assignment clauses, along with ERISA preemption, to leave healthcare providers with no forum or remedy).

The defense omitted any allegation regarding its anti-assignment clause. The silence is deafening. Significantly, United routinely enters federal courthouses representing to judges – under Fed. R. Civ. P. 11 – that their plans void *ab initio* a provider obtaining derivative standing via assignments. *E.g.*, *E. Coast Aesthetic Srgy. v. United Healthcare*, 2018 WL 3201798, at *2-3 (D.N.J. June 29, 2018) (United arguing no ERISA standing due to anti-assignment clause); *Premier Health*

*Ctr., P.C. v. UnitedHealth Grp.*, 2012 WL 1135608, at *8–9 (D.N.J. Apr. 4, 2012) (same); *Temple Univ. Hosp., Inc. v. Oxford Health Plans*, 2006 WL 1997424, at *8-10 (E.D. Pa. July 13, 2006) (same).[11] Indeed, United litigated this issue <u>all the way to the Ninth Circuit</u>: *Spinedex Phys'l Therapy USA v. United Healthcare of Ariz.*, 770 F.3d 1282, 1296 (9th Cir. 2014), *cert. denied*, 136 S. Ct. 317 (2015) (United arguing provider-plaintiff lacked ERISA standing due to its anti-assignment clause).

Because of the prevalence of anti-assignment clauses, and health insurers' historical position, courts in this District have held that a removing-insurer must attach the plan to its pleading, or otherwise establish that there is no provision in it that may cause an assignment to be void. *E.g.*, *Somerset Ortho. Assocs. v. Aetna Life Ins.*, 2007 WL 432986, at *1-2 (D.N.J. Feb. 2, 2007) ("defendant's argument that 'there is no allegation of an anti-assignment provision' is without merit, as the **defendant failed to meet its burden of providing a copy of the benefit plan** to the Court for review") (emph. added); *N. Jersey Ctr*, 2008 WL 4371754, at *8 n.5 (same)

---

[11]  *E.g.*, *Univ. Spine Ctr. v. United Healthcare*, 2018 WL 4089061, at *2–4 (D.N.J. Aug. 27, 2018) (same); *Univ. Spine Ctr. v. United Healthcare*, 2018 WL 2332204, at *2–3 (D.N.J. May 23, 2018) (same); *Enlightened Sols. v. United Behv'l Health*, 2018 WL 6381883, at *3-5 (D.N.J. Dec. 6, 2018) (same); *Merrick v. UnitedHealth Grp.*, 175 F. Supp. 3d 110, 117-20 (S.D.N.Y. 2016) (same); *Almont Ambulatory Srgy. Ctr. v. UnitedHealth Grp.*, 121 F. Supp. 3d 950, 988 (C.D. Cal. 2015) (same); *MC1 Healthcare v. United Grp.*, 2019 WL 2015949, at *7 n.9 (D. Conn. May 7, 2019) (same); *Mbody Minimally Invasive Srgry. v. United Healthcare Ins. Co.*, 2016 WL 4382709, at *6- (S.D.N.Y. Aug. 16, 2016) (same).

United cannot have its cake and eat it too. *See N. Jersey Ctr*, 2008 WL 4371754, at *4 (cannot assert provider standing to obtain removal, then flip flop and claim no standing as merits defense); *MedWell v. CIGNA Healthcare of N.J.*, 2013 WL 5533311, at *4 (D.N.J. Oct. 7, 2013). More fundamentally, United should be judicially estopped from taking duplicitous, incoherent positions on the efficacy of its anti-assignment clause and the validity of providers' derivative ERISA standing. To be blunt, United has made its bed; now it must sleep in it.

### (3) Defendants' Speculation Proves Nothing

To sidestep the gaps in their jurisdictional proofs, United submits two HCFA claim forms for Patients P.B. and J.R. *See* Not. Removal ¶¶ 12, 14, Exs. B & D. However, courts in this District have repeatedly rejected the premise that checking Box 27 on these forms is a substitute for proof of executed, valid assignments.

Health insurance claims are submitted to insurers on a standardized HCFA-1500 form developed by the federal Centers for Medicare & Medicaid Services. *See* EMR Consultant, <u>CMS 1500 Claim Form</u> (Aug. 20, 2013) (attached to Certification of David M. Estes, Esq. ("Estes Cert.") as Ex. 1). That form contains "Box 27":



*See* Exs. B & D (attached Not. Removal). The significance and meaning of Box 27 when submitting this form to a private healthcare insurer is highly contextual. Since

HCFA-1500 was developed by the federal government, and Box 27 by its own terms references "govt. claims," many providers believe checking "yes" indicates only that a provider will "accept" assignments for Medicare and Medicaid benefits. *See, e.g.*, ANSI, *CMS-1500 Claim Form*; S.C. Medicaid Dental Program, *Completion of the CMS 1500 (08/05) Claim Form* (attached to Estes Cert. as Exs. 2 & 3).

By contrast, when a claim is submitted in the **private insurer context** (like here), the meaning of the Box 27 varies and is unsettled:

> Check with each carrier to receive clarification on what each of these choices mean to that specific carrier. Some consider a yes to mean that the fee schedule will be accepted in full with no balance billed to the patient, while others consider a yes to mean that the check will go to the provider. Other carriers consider a no to mean that the correspondence will go to the patient and not the provider.

*See* Bradley, *The new CMS 1500 claim and how to avoid common stumbling blocks*, Dentistry IQ (Feb. 17, 2015) (attached to Estes Cert. as Ex. 4). Significantly, the National Uniform Claim Committee "does NOT define what accepting assignment might or might not mean." *See* InstaCode, *What Does Accept Assignment Mean?* (attached to Estes Cert. as Ex. 5). *E.g.*, Mayo Clinic, *Understanding Your HCFA 1500 Claim Form* (attached to Estes Cert. as Ex. 6). In short, because Box 27 is highly circumstantial, United's reliance on the HCFA forms is insufficient to carry its heavy burden of removing "all doubts" regarding whether NJBSC has standing.

Thus, decisional law in this District has repeatedly rejected health insurers' attempts to bootstrap HCFA-1500 in place of actual proof of an assignment:

> [T]he electronically submitted health insurance claim form 1500 of [the plaintiff-provider] with reference to services rendered to [the insured-patient] and claimed that…electronically filed HCFA has an entry corresponding to box 27 which indicates that [the provider] did, in fact, accept assignment.

*N.J. Spinal Med. & Surgery v. Aetna Ins. Co.*, 2009 WL 3379911, at *3 (D.N.J. Oct. 19, 2009)(citations & quot. marks omitted). Judge Martini found,

> that [**Box 27**] <u>**fails**</u> **to establish the existence of a valid assignment** between Plaintiff and any of the Aetna Insureds and Aetna has, therefore, failed to meet its burden of demonstrating that Plaintiff received valid assignments…by a preponderance of the evidence.

*Id.* at *3-4 (emph. added). Similarly, Judges Falk and Cavanaugh have rejected United's premise that checking boxes on a standardized claim form is sufficient to satisfy the first prong of the *Pascack* test. *NJBSC*, 2017 WL 659012, at *4 n.7, *R&R adopted*, 2017 WL 1055957 ("Aetna claims that…entry corresponding to box 27 which, when checked, indicates that the NJBSC has accepted an assignment. The Court finds this insufficient to confer standing."); *IBEW*, 2012 WL 1988708, at *2 ("Court is not convinced that…by 'marking box 27 'acceptance of assignment'…, Plaintiff has accepted an assignment.").

Reliance on HCFA forms is also insufficient because it in no way permits the Court to assess the <u>scope</u> of the purported AOBs:

> The scope of the assignment is essential to establishing derivative standing as courts have made distinctions between assignments that only give the provider the right to reimbursement for medical services

19

> – which are not ERISA claims – and assignments that give the provider
> a full assignment of benefits, which are ERISA claims.

*N. Jersey Ctr.*, 2008 WL 4371754, at *7–8 (citations & parens. omitted). As Judge

Salas held in *Vaimakis* (which involved the <u>same defense counsel and United</u>

<u>defendants</u>), speculation regarding what is "customary in the profession" is

insufficient to satisfy a defendant's heavy burden to prove removal jurisdiction. 2008

WL 3413853, at *4 (D.N.J. Aug. 8, 2008). "Vague references to a common practice

of non-network providers and a purported assignment of benefits to [the provider]

fail to conclusively establish that [the provider] has a complete assignment…." *N.J.*

*Spinal*, 2009 WL 3379911, at *4.  *See also Hobbs*, 276 F.3d at 1242 (11th Cir. 2001)

(rejecting insurer's argument that "plausibility" is sufficient for ERISA standing).

At bottom, the leading Third Circuit precedents unanimously involve an

<u>actual</u> assignment; none permits derivative ERISA standing by Box 27. *NJBSC v.*

*Aetna*, 801 F.3d 369, 372-73 (3d Cir. 2015); *CardioNet*, 751 F.3d at 176 n.10, 178-

79; *see Cmty. Med.*, 143 F. App'x at 435–36. If checking a box on a form is all that

was required to establish ERISA standing, then there would not be **over 100 cases**

in this Circuit where healthcare insurers systematically argue that providers lack

standing unless it produced an <u>actual</u> assignment–spawning an enormous volume of

ERISA standing litigation. All health providers routinely submit claims on these

forms. Yet, when a dispute arises, insurers argue providers lack standing. Which is

it? United cannot have it both ways. If it genuinely believed that Box 27 was

sufficient, then it would not regularly move to dismiss for lack of standing since almost all claims are submitted on this form. United should be judicially estopped from even asserting this inconsistent position. *AFN, Inc. v. Schlott, Inc.*, 798 F. Supp. 219, 223, 225 (D.N.J. 1992) (judicial estoppel prohibits inconsistent positions).[12]

In sum, the remand analysis is limited to United's filed removal pleading. *USX*, 345 F.3d at 205; *State Farm*, 227 F. Supp. 2d at 240-41. United failed to satisfy Prong 1(A) of *Pascack*. The applicable standard requires all doubts to be construed in favor of remand. *MedWell*, 2013 WL 5533311, at *4 ("a genuine [fact] issue as to lack of standing… necessitate[s] remand…under ERISA"); *N. Jersey Ctr*, 2008 WL 4371754, at *4 ("absence of evidence leaves this Court with grave doubt…Plaintiff would have standing…under ERISA. Such doubt augers in favor of remand.").

## E.   __Prong 1(B) of *Pascack*__

Even if *arguendo* United had attached AOBs for each of the 27 patients, and established there are no anti-assignment clauses in all their plans, this action still

---

[12]   United avers that plaintiff "has standing to sue" and cites *NJBSC*, 801 F.3d 369 (3d Cir. 2015). This is a *non sequitur*. That prior case involved different patients, a different insurer (Aetna), different theories of liability, and most significantly, there it was undisputed that NJBSC had obtained a valid, executed assignment. *Id.* at 370-72. The fact that in an unrelated, prior case different patients receiving different medical treatment provided NJBSC an executed assignment is probative of nothing here. As articulated in the Third Circuit's companion decision issued the same day, having an assignment in hand is essential because the content of the assignment is an essential facet of a district court's jurisdictional analysis. *Am. Chiro. Ass'n v. Am. Specialty Health*, 625 F. App'x 169, 172, 174-75 (3d Cir. 2015).

should be remanded. United must also satisfy Prong 1(B), *i.e.*, that the alleged "one or more" AOBs are broad enough to encompass all eight causes of action. The mere existence of an assignment does not end the analysis. The defense must establish "that the <u>actual claim</u> asserted by [NJBSC] can be considered a colorable claim for benefits under Section 502(a)(1)(B)." *Progressive*, 2017 WL 4011203, at \*5. *Accord MHA*, 2018 WL 549641, at \*3; *Emergency Phyns.*, 2014 WL 7404563, at \*5–6.

> It is a basic principle of assignment law that an assignee's rights derive from the assignor. That is, "an assignee…can acquire through the assignment no more and no fewer rights than the assignor had, and cannot recover under the assignment any more than the assignor could recover"…. [Providers] stand in the shoes of the Participants, and have "standing to <u>assert whatever rights the assignor[s] possessed</u>."

*CardioNet*, 751 F.3d 165, 178 (citations omitted; emph. by court). The content and scope of an assignment are an essential component of the jurisdictional analysis. *Am. Chiro. Ass'n v. Am. Spclty. Health*, 625 F. App'x 169, 172 n.3, 174 n.8, 174–75 (3d Cir. 2015); *Cmty. Med.*, 143 F. App'x at 436 ("even assuming that…assignments do exist, we still have no way of knowing their… parameters"); *N. Jersey Ctr.*, 2008 WL 4371754, at \*7-8 (court "determine[s] the scope of assignment and hence determine whether there is federal jurisdiction. The scope of the assignment is essential to establishing derivative standing"); *Ctr. for Ortho. & Sports Med. v. Horizon*, 2015 WL 5770385, at \*4 (D.N.J. Sept. 30, 2015) ("courts look to the language of the assignment") (collecting cases). Notably, United has a track record of challenging provider suits on the ground that an assignment is not broad enough.

*E.g.*, *Biomed Pharms., Inc. v. Oxford Health Plans (NY), Inc.*, 775 F. Supp. 2d 730, 736 (S.D.N.Y. 2011); *Premier Health Ctr., P.C. v. UnitedHealth Grp.*, 292 F.R.D. 204, 218–19 (D.N.J. 2013). The rule is clear:

> Complete preemption refers to the situation in which federal law not only preempts a state-law cause of action, but also substitutes an exclusive federal cause of action in its place…. [R]emoval based on preemption is permissible only if federal law provides a **replacement** cause of action.

*Hansen*, 902 F.3d at 1057-58 (9th Cir. 2018) (citations & q.m. omitted; e.a.).

> State law claims that fall outside of the scope of [ERISA's civil enforcement provision], even if preempted by [ERISA], are still governed by the well-pleaded complaint rule, and therefore, are not removable under…complete preemption principles.

*Dieffenbach*, 310 F. App'x at 508 (3d Cir. 2009) (citations & q.m. omitted). *E.g.*, *Somerset*, 2007 WL 432986, at *1 ("action is not completely preempted…because the plaintiff would lack standing to bring an action under ERISA").

To overcome remand, United must establish--and concede--that the "one or more" purported AOBs are broad enough in scope and identify the "replacement" federal causes of action which are coextensive with NJBSC's state-law contentions. Federal preemption does not allow removal only to leave a state plaintiff in federal court with no reciprocal federal causes of action. *Hansen*, 902 F.3d at 1057-58.

Therefore, Patient W.M.'s assignment can only provide the Court jurisdiction if it transfers to NJBSC standing to bring all the types of claims asserted in the Complaint. Clearly, defendants cannot shoehorn the statutory and common law

claims pled into the assignment language of Patient W.M., nor does ERISA § 502 provide corollary causes of action or remedies to NJBSC.[13] Since defendants failed to allege (and concede) that the patient's "right to payment" assignment is broad enough to encompass all the claims, they cannot satisfy the Prong 1(b) of *Pascack*.

## F.   <u>No Preemption of Direct Claims</u>

Irrespective of the assignment for Patient W.M. (and HCFA forms for Patients P.B. and J.R.), defendants nevertheless cannot satisfy the first prong of *Pascack*, as this action is <u>not</u> rooted in the patients' derivative ERISA rights. Rather, this lawsuit seeks to enforce NJBSC's **own direct** rights under state law arising from its interactions with defendants. Consequently, the existence or non-existence of an assignment, its scope and corollary federal causes of action are all irrelevant – as this Court held in *MHA*, 2018 WL 549641, at *3 n.3 (D.N.J. Jan. 25, 2018) (quoting *NJBSC*, 2017 WL 659012, at *4, *R&R adopted*, 2017 WL 1055957); *accord Goldberg v. Schindler Elev.*, No. 3:17-07147, at 26:24-27:27 (D.N.J. Apr. 23, 2018) (Shipp, J. holding "'mere existence of an assignment does not convert [Plaintiffs']

---

[13]   Patient W.M.'s AOB involves the same language that the Third Circuit considered in *NJBSC*, 801 F.3d 369 (3d Cir. 2015). *See Rahul Shah, M.D. v. Horizon Blue Cross Blue Sh.*, 2016 WL 4499551, at *8–9 (D.N.J. Aug. 25, 2016) ("language of [this] assignment…is not a barebones assignment of the right to payment like the assignment in [*NJBSC*]. Rather, like the assignment in *CardioNet*, it includes 'all of [the patient's] rights and benefits under [her] insurance contract'…and authorizes [the provider] to act…'in regard to [her] general health insurance coverage'").

24

state law claims into an ERISA claim for benefits'") (quoting *NJBSC*, 2017 WL 659012, at *4) (attached Estes Cert. as Ex. 7).

The Third Circuit in *CardioNet* held that a "'provider that has received an [AOB] and has a[n independent] state law claim…holds <u>two separate claims</u>'" and each set of claims stands on its own merits (not "dissipate[d]"). 751 F.3d at 178 (quoting *Conn. St. Dental Assoc. v. Anthem Health Plans*, 591 F.3d 1337, 1347 (11th Cir. 2009)) (emph. by court). The Eleventh Circuit in *Conn. State Dental* elaborated:

> [A] provider that has received an assignment of benefits and has a state law claim independent of the claim arising under the assignment holds two separate claims. In such a case, the provider may assert a claim for benefits under ERISA, the state law claim, or both. Thus, so long as the provider's state law claim does not fall within § 502(a), the <u>existence of the assignment is irrelevant</u> to complete preemption if the provider asserts no claim under the assignment…. The Third, Fifth, and Ninth Circuits have applied these principals to determine the line of demarcation between ERISA and state law claims in actions brought by healthcare providers.

591 F.3d at 1347 (citing *Pascack*, 388 F.3d 393, *Blue Cross of Cali. v. Anesthesia Care Assocs. Med. Grp.*, 187 F.3d 1045, 1050-51 (9th Cir. 1999), *Marin Gen. Hosp. v. Modesto & Empire Traction*, 581 F.3d 941, 947 (9th Cir. 2009), and *Franciscan Skemp Healthcare v. Cent. States Jt. Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 598 (7th Cir. 2008)) (other citations & parens. omitted). Courts in this District, and across the nation, follow *Conn. St. Dental*'s well-reasoned limit on preemption.[14]

---

[14]    *E.g.*, *Progr. Spine & Orthos. v. Empire Blue Cross Blue Sh.*, 2017 WL 751851, at *9 (D.N.J. Feb. 27, 2017) ("simply because the medical provider was

Congruent with *CardioNet* and *Conn. St. Dental*, here plaintiff – who is the master of its complaint – has elected to assert non-derivative, direct claims:

> As a matter of routine business practice, plaintiff NJBSC engaged in regular communications and discussions with defendants and/or their agents regarding coverage, reimbursement and other issues; plaintiff submitted its claims **directly** to defendants and/or their agents; the provider submitted claims were generally processed by defendants and/or their agents; when defendants issued (under)payments, they issued **direct** reimbursement to NJBSC; defendants and/or their agents issued [Explanation of Benefits ("EOBs")] and other statements directly to NJBSC; and NJBSC undertook and engaged in numerous appeals of defendants' coverage and reimbursement decisions.

> Throughout the parties' course of dealings and numerous forms of communication and interaction, defendants and/or their agents

---

assigned the patient's benefits…, it did not mean that a claim under [ERISA §] 502(a) was the only cause of action the medical provider could bring….state law claims based on an alleged oral contract between the medical provider and plan administrator preauthorizing the patient's medical procedure…were not completely preempted") (citing *Conn. St. Dental*, 591 F.3d at 1347, and *Marin Gen.*, 581 F.3d 941); *Emergency Servs. of Zephyrhills v. Coventry Health Care of Fla.*, 281 F. Supp. 3d 1339 (S.D. Fla. 2017) ("existence of the assignment is irrelevant to complete preemption if the provider asserts no claim under the assignment") (citing *Conn. St. Dental*, 591 F.3d at 1347, *Franciscan Skemp*, 538 F.3d at 598, *Marin*, 581 F.3d at 945, and *Anesthesia Care*, 187 F.3d at 1052); *Feldman's Med. Ctr. Pharmacy v. CareFirst*, 723 F. Supp. 2d 814, 820–21 n.12 (D. Md. 2010) (provider "may seek recovery…on bases other than the assignments, such as constructive or implied contract…. Liability under a constructive or implied contract is based on [the provider's] relationship with [defendant-insurer] CareFirst"; "that [the provider's] assignment-based claims are within ERISA does not affect its claims that are not based on the assignments.") (citing *Conn. St. Dental*, 591 F.3d at 1347); *Children's Hosp. v. Kindercare Learning Ctrs.*, 360 F. Supp. 2d 202, 207 (D. Mass. 2005) ("the fact that [the] Hospital could have sued as an assignee is not the test for complete preemption. As a master of its own complaint, [the] Hospital had the right to assert independent causes of action regardless of the assignment"); *Encompass Off. Sols. v. Ingenix*, 775 F. Supp. 2d 938, 951 n.5 (E.D. Tex. 2011); *Anesth. & Critical Care Spclts. of Palm Beach v. Aetna Health*, 2010 WL 11596863, at *5 (S.D. Fla. 2010).

26

voluntarily and freely engaged with and dealt **directly** with NJBSC. NJBSC relied in good faith on defendants' conduct and the parties' course of dealings.

All the subject claims arise from state common, statutory and regulatory law, and not from any purported federal law or statute.  Plaintiff has asserted **direct claims and causes of action that are not predicated on an assignment of benefits** from the patient.

All claims and causes of action herein arise from and/or under one or more "**independent duties**"…including, *inter alia*….pre-authorizations and/or pre-certifications and/or payment verifications provided by defendants to plaintiff to induce plaintiff to render surgical and medical services with the promise of coverage and payment.

Defendants negligently **represented** that they would provide proper coverage to the patients…, and thus pay the claims correctly, including by way of pre-authorization and/or pre-certification of surgical services, and/or payment verification and/or paying for initial care, and then in each instance refusing proper payment when the bills were submitted by NJBSC.

Defendants further indicated, by a **course of conduct, dealings** and the circumstances surrounding the relationship, to NJBSC that defendants would hold their insureds harmless and thus timely pay plaintiff its billed charges or UCR amounts based upon what other healthcare providers of the same specialty in the same geographic area charge for the services…in accordance with the State Insurance Mandates.

Defendants also indicated, by a **course of conduct, dealings** and the circumstances surrounding the relationship, to NJBSC that they would honor…(a) their representations to NJBSC that the services rendered were authorized and/or pre-certified…and (b) their representations to NJBSC that preauthorization was not required, *e.g.*, emergent care.

This lawsuit addresses…defendants' failure to properly *reimburse* plaintiff for its services…. **There is no dispute that defendants' plan provides coverage** for the patients and claims contained in the DCL, as **defendants already issued partial payments**.

*See* Compl. ¶¶ 36-39, 76, 48-49, 41 (bold added). In sum, defendants cannot remove "all doubt" as to the first prong of *Pascack* because they lack assignments, defendants use boilerplate anti-assignment clauses, there is no averment that the assignments are broad enough to provide "replacement" federal causes of action, and plaintiff is asserting direct claims independent of any alleged assignments.

## G.    <u>Prong 2 of *Pascack*</u>

Separate and apart, this action should be remanded because it also fails Prong 2. There is jurisdiction only if defendants demonstrate "there is no other independent legal duty that is implicated by a defendant's actions," that is, "no legal duty (state or federal) independent of ERISA or the plan terms." *Davila*, 542 U.S. at 208. Here, NJBSC's claims arise largely from three "buckets" of liability: (1) defendants' pre-approval of the services rendered; (2) the parties' course of conduct and dealings, resulting in an implied contract; and (3) other direct conduct, including breaching a post-service agreement and the MultiPlan contract. *See* Compl., ¶¶ 21-26, 29, 32, 34, 36-39, 44-49, 62-69, 76-79, 88-93. All three categories involve disputes over the amount of coverage (not the existence of coverage); defendants already issued partial payment. *See* Compl., ¶¶ 21, 41. The preceding actions by defendants each implicate New Jersey legal duties independent of the purported "ERISA plans."

**(1)  The *Memorial Hospital* Rule**

Defendants cannot establish the second prong of *Pascack* with respect to NJBSC's misrepresentation, *quasi* contract claims and tort claims as these claims are grounded on defendants' statements and conduct in the pre-approval process.

Federal precedent across the nation has repeatedly held that when a provider's claims are predicated on an insurer's misrepresentation and inducement during the pre-approval process, then such claims are beyond ERISA preemption. For example, the Second Circuit in *McCulloch* categorically rejected the notion that ERISA § 502 trumps state law claims predicated on the insurer's misrepresentations:

> We conclude that any legal duty [defendant-insurer] Aetna has to reimburse [the plaintiff-provider] is <u>independent and distinct from its obligations under the patient's [ERISA] plan</u>. [The provider's] promissory-estoppel claim against Aetna arises not from an alleged violation of some right contained in the plan, but rather from <u>a freestanding state-law duty grounded in conceptions of equity and fairness</u>.
>
> * * *
>
> [The provider's] promissory-estoppel claim is not completely preempted by ERISA. [The provider] does not seek to enforce the patient's right to reimbursement. He is suing in his <u>own right pursuant to an independent obligation</u>.

857 F.3d at 150-151 (emph. added). *McCulloch* is grounded on the seminal *Memorial Hospital* decision two decades ago, rejecting preemption on these facts:

> A purely semantic approach [to ERISA preemption] cannot be taken to its logical extreme, however.
>
> * * *

29

Before determining if ERISA's regulatory or preemptive scheme is implicated by the effects of this cause of action,[15] it is first necessary to examine the <u>commercial realities of…a health care provider</u>…. A patient in need of medical care…seeks treatment from a doctor. The costs of medical care are high and many providers have only limited budget allocations for indigent care and for losses from patient nonpayment….

If a provider believes that a patient may be covered under a health care plan, it is a customary practice to communicate with the plan agents to verify eligibility and coverage. If the provider confirms that a patient has health insurance that covers a substantial part of the expected costs of the health care, it will normally agree to [treat] the patient without further ado.

\* \* \*

We are also <u>unpersuaded that preemption in this case would further the congressional goal of protecting the interests of employees and their beneficiaries</u>.

\* \* \*

We cannot believe that Congress intended the preemptive scope of ERISA to shield welfare plan fiduciaries from the consequences of their acts toward non-ERISA health care providers when a cause of action based on such conduct would not relate to the terms or conditions of a welfare plan, nor affect – or affect only tangentially – the ongoing administration of the plan.

*Memorial Hosp. Sys. v. Northbrook Life Ins.*, 904 F.2d 236, 244, 246-48 250 (5th Cir. 1990) (citations & quot. marks omitted).[16] The *Memorial Hospital* rule is clear:

---

[15]    The plaintiff-provider had "assert[ed] only state law causes of action: deceptive and unfair trade practices under…the Texas Insurance Code; breach of contract; negligent misrepresentation; and equitable estoppel."  *Id*. at 238.

[16]    While the *Memorial Hospital* rule originated in the context of ERISA § 514, courts have made clear that it applies with equal force in the context of ERISA § 502. *McCulloch*, 857 F.3d at 148-51; *Conn. St.*, 591 F.3d 1337, 1346–47 n.7; *e.g.*, *Peterson*, 2014 WL 4054120, at *1-2 (D.N.J. Aug. 15, 2014); *Forest Amb'y Surgical Assocs. v. UnitedHealthcare Ins.*, 2013 WL 11323600, at *9 (C.D. Cal. 2013).

when insurance companies and…administrators verify coverage to third-party health care providers, they are creating an independent obligation…to pay for the services rendered in reliance thereon

* * *

[I]t should realize that either it is consenting to the payment of plan benefits or it should except the consequences for a false representation of coverage that the provider reasonably relied upon.

*Hoag Mem'l Hosp. v. Managed Care Admins.*, 820 F. Supp. 1232, 1236 (C.D. Cal. 1993). A court will not need to examine an ERISA plan to decide plaintiff's claims:

[The] ultimate <u>fact finder will not have to interpret an ERISA plan to determine the terms of the implied contract</u> or the nature of [the insurer's] misrepresentations…. [The provider] has alleged implied contract formation and misrepresentations that are completely independent of the terms and meaning of an ERISA plan.

*Catholic Healthcare W.-Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563, 564–65 (9th Cir. 2008) (emph. added).

Significantly, this rule is accepted by the majority of jurists in this District:

*McCall v. Metro. Life Ins.*, 956 F. Supp. 1172, 1185-87 (D.N.J. 1996) (Simandle, J.); *Garrick*, 2016 WL 6877778 (Wettre, J.), *R&R adopted*, 2016 WL 6877740 (Wigenton, J.); *Glastein v. CareFirst Blue Cross Blue Sh.*, 2019 WL 1397488, at *8 (D.N.J. Mar. 28, 2019) (Martinotti, J.); *Small v. Anthem Blue Cross Blue Sh.*, 2019 WL 1220322, at *3 (D.N.J. Mar. 15, 2019) (Vazquez, J.); *N. Jersey Spine Grp. v. Blue Cross & Blue Shield of Mass.*, 2018 WL 2095174, at *2 (D.N.J. May 7, 2018) (Linares, CJ.); *Progressive Spine & Orthos. v. Empire Blue Cross Blue Sh.*, 2017 WL 751851, at *10, n.7 (D.N.J. Feb. 27, 2017) (Vazquez, J.); *Elite Ortho. & Sports*

31

*Med. v. Cigna Healthcare*, 2017 WL 1905266, at *4–5 (D.N.J. Apr. 20, 2017) (Dickson, J.), *R&R adopted*, 2017 WL 1902162 (D.N.J. May 8, 2017) (Salas, J.); *Peterson v. Cigna Ins.*, 2014 WL 4054120 (D.N.J. Aug. 15, 2014) (Chesler, J.). In short, courts in the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits all follow the *Memorial Hospital* rule, and concur that claims relating to misrepresentations during pre-approval, as alleged against defendants here, that induce a provider to render services are not preempted.[17]

In this case, 10 patients involve disputes where defendants' pre-approval was relied on and induced NJBSC to render medical services. With respect to Patients M.P., J.D., M.P-E., K.H., D.P., D.M., C.E., M.S., D.H. and A.F., *see* Compl., ¶ 21, NJBSC only rendered services because of defendants' representations that the surgical services to be provided were covered and paid at usual and customary rates, *id*. ¶¶ 22-24, 45, 48-49, 67-69, 76-78. For the other 17 patients, plaintiff relied on defendants' representations that formal pre-approval was not necessary for

---

[17]     *E.g.*, *Children's Hosp.*, 360 F. Supp. 2d at 206 (in 1st Cir.); *McCulloch*, 857 F.3d 141, 148 (2d Cir. 2017); *McCall*, 956 F. Supp. at 1186 (D.N.J. 1996) (in 3d Cir.); *Drs. Reichmister, Becker, Smulyan & Keehn v. United Healthcare of Mid-Atl.*, 93 F. Supp. 2d 618, 621–22 (D. Md. 2000) (in 4th Cir.); *Access Mediquip v. United Healthcare Ins.*, 662 F.3d 376, 382 (5th Cir. 2011), *aff'd en banc*, 698 F.3d 229 (5th Cir. 2012); *SLF No. 1 v. United Healthcare Servs.*, 2014 WL 518222, at *4-5 (M.D. Tenn. Feb. 7, 2014) (in 6th Cir.); *Franciscan*, 538 F.3d at 599–600 (7th Cir. 2008); *In Home Health v. Prudential Ins. Co. of Am.*, 101 F.3d 600, 604 (8th Cir. 1996); *The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1008-10 (9th Cir. 1995); *Hospice of Metro Denver v. Grp. Health Ins. of Okla.*, 944 F.2d 752, 754-56 (10th Cir. 1991); *Lordmann Enters. v. Equicor*, 32 F.3d 1529, 1533-34 (11th Cir. 1994).

emergency services, representations in EOBs that patients could not be balance billed, and prior payment consistent with New Jersey healthcare statutes and regulations. *Id*. ¶¶ 22-26, 32, 37, 44-49, 89-90. Thus, as to Patients P.B., N.D., P.P., F.C., M.M., C.F-P., S.D.K., A.P., J.C., R.C-B., C.P., O.P., W.M., J.R., I.M. and A.P. II, *id.* ¶ 21, NJBSC only rendered services because of defendants' statements and conduct conveying that emergency surgical services would be paid in accordance with the rates required by law, *e.g.*, *id*. ¶¶ 22-24, 89-90, 98-99.

What is more, separate and apart from defendants' statements during the pre-approval process, in this case the *Memorial Hospital* rule also applies to defendant's negligent representation in placing the MultiPlan logo on Patient P.P.'s insurance card, *id.* ¶ 21, which induced NJBSC to render medical services based on the expectation to be reimbursed in accordance with the contract rates provided under the MultiPlan PPO agreement. This implicates yet another independent duty, as Judge Shipp recently recognized. *MultiPlan, Inc.*, 2018 WL 6592956, at *7-8 ("presence of the MultiPlan logo on the insurance cards…and [provider's] reliance on this logo, pursuant to [PPO] Agreement, establishes an independent duty" under Prong 2). Under the *Memorial Hospital* rule, there are independent duties precluding complete preemption of this action. Plaintiff's motion to remand should be granted.[18]

---

[18]    Defense counsel's March 6th letter (D.E. 8) cites a pair of outliers: *Atl. Shore Surgical Assocs. v. Horizon Blue Cross Blue Sh. of N.J.*, 2018 WL 2441770 (D.N.J.

### (2) **Course of Dealing & Industry Standards**

Beyond the *Memorial Hospital* rule, defendants' course of dealings and conduct gives rise to independent duties unfettered by ERISA plans or preemption. The Complaint asserts that the prior dealings and conduct between defendant(s) and plaintiff gives rise to an implied contract and *quasi* contract claims. *See* Compl. ¶¶ 21-26, 32, 36-37, 39, 44-49, 63, 89-90.

The Supreme Court has recognized the principle that "general state common-law requirements" are "not specifically developed" to regulate the subject of federal

---

May 31, 2018) and *Glastein v. Horizon Blue Cross Blue Sh. of Am.,* 2018 WL 3849904 (D.N.J. Aug. 13, 2018) ("*Glastein I*"). These decisions miss the mark.

*Atlantic Shore* and *Glastein I* are clearly out of step with the majority of jurists in this District, and 20 years of federal precedent. *See* pg. 29-32, *supra*. Indeed, *Atlantic Shore* and *Glastein I* have been openly rejected as "unpersuasive" by more-recent decisions. *Glastein v. Aetna, Inc.*, 2018 WL 4562467, at *3-4 (D.N.J. Sept. 24, 2018) ("*Glastein II*"); *Adv'd Orthos. & Sports Med. Inst. v. Blue Cross Blue Sh. of N.J.*, 2018 WL 3630131, at *1 (D.N.J. July 31, 2018); *E. Coast Adv'd Plastic Srgy. v. Horizon Blue Cross Blue Sh. of N.J.*, 2018 WL 6178869, at *6 (D.N.J. Nov. 26, 2018); *Comp. Spine*, 2018 WL 6445593, at *4–5, *denying reconsdr.* 2019 WL 928421, at *3-4 (D.N.J. Feb. 26, 2019).

In any event, the reasoning in *Atlantic Shore* and *Glastein I* is *ultra vires*. A district court must decide subject-matter jurisdiction, a threshold matter, before reaching the substantive merits of, and defenses to, a lawsuit. *E.g.*, *NJBSC*, 2017 WL 659012, at *5; *UPMC Presby*, 2005 WL 2335337, at *9. *See Cacoilo v. Sherwin-Williams Co.*, 2012 WL 2459409, at *1 (D.N.J. June 25, 2012) ("courts within this District consistently…resolve a pending motion to remand prior to ruling on other motions which address the merits of the case") (collecting cases); *Chrustowski v. Cumberland Cnty. Guidance Ctr.*, 2006 WL 3780555, at *2 (D.N.J. Dec. 20, 2006) ("once a motion to remand has been filed, it is incumbent upon the Court to proceed to decide that motion first because, if granted, the case is remanded…. This approach is consistent with the…principle that federal courts are of limited jurisdiction").

law, and so "are not the kinds of requirements that Congress…feared would impede the ability of federal regulators to implement and enforce specific federal requirements." *Medtronic v. Lohr*, 518 U.S. 470, 501 (1996) (preemption under MDA). The same principle applies to ERISA preemption. *N.Y.S. Conf. of Blue Cross & Blue Sh. Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995). For instance, a court in this Circuit held, in the context of the broader ERISA § 514 preemption, that a provider's "claims derive from state laws of <u>general applicability</u> that do not on their face specifically refer to an ERISA plan. Indeed, …state law claims of breach of contract and unjust enrichment 'function[ ] irrespective of [ ] the existence of an ERISA plan.'" *Aetna Life Ins. v. Huntingdon Valley Srgy. Ctr.*, 2015 WL 1954287, at *4 (E.D. Pa. Apr. 30, 2015) (emph. added) (quoting *Ingersoll-Rand v. McClendon*, 498 U.S. 133, 139 (1990)). The same applies in the § 502 context. *E. Coast*, 2018 WL 6178869, at *3 (remanding implied contract; "preemption does not apply if the state claim 'has only a…peripheral connection with covered plans, as is the case with many <u>laws of general applicability</u>'")(emph. added). Likewise, Judge Falk held:

> NJBSC's claims [were] based on an alleged <u>implied contract</u> with [the defendant-insurer] arising out of a <u>course of dealing</u> between the parties. Because the claims are based on this independent duty, they are not preempted under § 502(a).

*NJBSC*, 2017 WL 659012, at *1, 5, n.3 (emph. added); *accord MultiPlan*, 2018 WL 6592956, at *3, 7-8 (Shipp, J. finding no preemption and remanding implied contract claim arising from insurer's course of dealings). *See Aetna Health v. Srinivasan*, No.

35

A-2035-14, 2016 WL 3525298, at *3-5,9 (N.J. App. Div. June 29, 2016) (recognizing N.J. health statutes and regulations inform an implied contract claim arising from health insurer's course of conduct).[19] Similarly, many courts have held in analogous circumstances that *quasi* contract claims are not subject to preemption. *E.g.*, *Pascack*, 388 F.3d at 397, n.2, 402-03 (holding no preemption of suit asserting unjust enrichment claim); *Barnert Hosp. v. Horizon Healthcare Servs.*, 2007 WL 1101443, at *1-3, 5-6, 12 (D.N.J. Apr. 11, 2007) (same); *Englewood Hosp. & Med. Ctr. v. Aftra Health Fund*, 2006 WL 3675261, at *1, 5 (D.N.J. Dec. 12, 2006) (same).

In short, New Jersey's common "laws of general applicability'" have not been "specifically developed" with respect to any alleged ERISA plans, *Travelers*, 514 U.S. at 661; *Lohr*, 518 U.S. at 501, are so are duties that arise independent of ERISA.

**(3)  Independent, Direct Contracts**

Defendants further incurred independent duties arising from their breach of, or interference with, independent contracts. Plaintiff's contract, *quasi* contract and

---

[19]   *See also N.J. Carpenters & the Trs. Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 304 (3d Cir. 2014) (holding N.J. statutory claim's "independence [of ERISA] is best understood by looking to the what the plaintiffs must prove to prevail. To determine whether the defendant is liable, a court must simply compare the amount that [plaintiffs] were paid to the amount that they were owed under the [N.J. statute]. No reference to any ERISA plan is necessary"). Similarly, the Ninth Circuit in *Hansen* held there can be "no dispute" that a provider's claims based on a state statute involve independent duties and rights; a health insurer cannot use  "its treatment guidelines to avoid complying with [statute statute]" as "the statutory duty exists apart from a plan's defined terms, even if a plan happens to use the same language." 902 F.3d at 1059-60.

economic tort claims are grounded on the independent duties relating to the MultiPlan PPO contract and the post-service resolution agreement. The Third Circuit has held that healthcare disputes arising from a direct contract between a health provider and insurer/administrator give rise to separate duties that are beyond the reach of ERISA preemption. *Pascack*, 388 F.3d at 402-03. Applying *Pascack*, courts have repeatedly held there is no ERISA preemption where a provider asserts that an insurer failed to pay rates required under a PPO, such as MultiPlan, and the dispute turns on the amount or level of coverage. *E.g.*, *Barnert Hosp.*, 2007 WL 1101443, at *1-2 (D.N.J. Apr. 11, 2007) (remanding dispute over third-party PPO contract); *Englewood*, 2006 WL 3675261, at *1-3 (D.N.J. Dec. 12, 2006) (same); *Newark Beth Israel*, 2006 WL 2830973, at *1-2 (D.N.J. Sept. 29, 2006) (same); *UPMC Presby Shadyside v. Whirley*, 2005 WL 2335337, at *1–2 (W.D. Pa. Sept. 23, 2005) (same).

Significantly, here all claims involve disputes over the amount of coverage – not the existence coverage, especially as **defendants <u>issued partial payments</u>**:

> Defendants have systematically failed to issue proper payment for the surgical and medical services rendered by plaintiff. Instead, defendants issued gross underpayment. In making improper payments, defendants' actions or inactions were unlawful and improper because defendants failed to calculate the *amount* of the payment in accordance with state statutory, regulatory and/or common law.

> This lawsuit addresses defendants' failure to provide the appropriate *amount* of coverage to the patient and defendants' failure to properly *reimburse* plaintiff for its services to that patient. There is no dispute that defendants' plan provides coverage for the patients and claims contained in the DCL, as defendants already issued partial payments.

*See* Compl., ¶¶ 33, 41; *see also* ¶ 21. Payment can only issue if defendants had

determined there was coverage for the services rendered. At its core, this action is a

dispute over the amount of coverage. It is well settled that such disputes are not

subject to ERISA preemption.

> To constitute a claim that is subject to ERISA preemption, an action
> must be "a suit complaining of denial of coverage for medical care."
> Or, to use the language of the statute, the action must be "to recover
> benefits due to him under the terms of his plan, to enforce his rights
> under the terms of the plan, or to clarify his rights to future benefits
> under the terms of the plan."

*Emergency Physicians*, 2014 WL 7404563, at *5 (quoting *Davila*, 542 U.S. at 210,

and 29 U.S.C. § 1132). The Third Circuit has cautioned courts against "conflating"

claims seeking "coverage" with those disputing the "amount" of "reimbursement,"

explaining that only the former are preempted – the later are not:

> [Defendant-insurer's] argument to the contrary rests on a conflation of
> claims, such as this one, seeking <u>coverage</u> under a benefit plan, and
> claims seeking <u>reimbursement</u> for coverage provided. **The distinction
> is key**. As we explained in *Pascack Valley*, a provider may bring a
> contract action for an insurer's failure to reimburse the provider
> pursuant to the terms of the agreement, while a claim seeking coverage
> of a service may only be brought under ERISA. 388 F.3d at 403–04
> (holding that a hospital had an independent breach of contract action
> against the insurer because "the dispute here is not over the <u>right</u> to
> payment, which might be said to depend on the patients' assignments
> to the Providers, but **the <u>amount, or level, of payment</u>**, which depends
> on the terms of the provider agreements" (emphasis in original;
> quotation marks and alterations omitted)).

*CardioNet*, 751 F.3d at 177-78 (bold added). The same distinction applies here.

## H.    Conclusion

In sum, United has not eliminated "all doubts" regarding whether this case falls within the "narrow class of cases" subject to complete preemption. The crux of the eight causes of action here are predicated on duties independent of ERISA, and proving these claims will not require a factfinder to consider the alleged ERISA plans.[20] Respectfully, the Court lacks federal question jurisdiction over this case.

## POINT III

## THERE IS NO BASIS FOR SUPPLEMENTAL JURISDICTION

Even if *arguendo* there was ERISA jurisdiction regarding an isolated allegation or claim, that jurisdiction would be extinguished when a court has dismissed it as preempted. Therefore, if *arguendo* this Court found an item is

---

[20]    Defendants allege that the "Court must examine the ERISA plan documents" and "interpretation of the plan documents forms an essential part of the state law claims" *See* Not. Removal, ¶¶ 10-11, 21-22. The crux of this dispute, however, has little to no bearing on the terms of defendants' alleged ERISA plans. *Pascack*, 388 F.3d at 402 (holding no ERISA removal jurisdiction where the "crux of the parties' dispute is the meaning…of the Subscriber Agreement," even though provider's "claims…are derived from an ERISA plan, and exist 'only because' of that plan") (citing *Anesth. Care*, 187 F.3d at 1051) ("the **bare fact that the Plan may be consulted in the course of litigating a state-law claim does not require that the claim be extinguished by ERISA**") (emph. added); *Horizon Blue Cross Blue Sh. of N.J. v. E. Brunswick Srgy. Ctr.*, 623 F. Supp. 2d 568, 573–74 (D.N.J. 2009) (same); *Lone Star OB/GYN Assocs. v. Aetna Health*, 579 F.3d 525, 531 n.5, 532 (5th Cir. 2009) ("'when the meaning of contract terms is not the subject of dispute, the bare fact that [an ERISA plan] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.'"). Moreover, Ex. G of the removal contradicts United's claim, indicating claims were paid, not based on an ERISA plan, but by United corporate policy, "THE MANAGED CARE SYSTEM."

preempted, it should sever and remand the lion's share of clams, Fed. R. Civ. P. 21, as the state law claims and issues clearly predominate. *DeAsencio v. Tyson Foods*, 342 F.3d 301, 308-09 (3d Cir. 2003).  *E.g.*, *Mazzola v. AmeriChoice of N.J.*, 2013 WL 6022345, at *3 (D.N.J. Nov. 13, 2013) (in healthcare context, comity requires remand); *MedWell*, 2013 WL 5533311, at *4 n.6 (D.N.J. Oct. 7, 2013) (same).

Virtually all of NJBSC's claims relate to breaches and violations of New Jersey statutory or common law arising under or relating to United's misrepresentations and course of conduct inducing NJBSC to render services to defendants' insureds. Accordingly, if the Court concludes there is jurisdiction as to some small subset of claims, it should remand all the remaining claims to Superior Court. *Makwana v. Medco Health Servs.*, 2016 WL 7477755, at *4 (D.N.J. 2016) (citing *Boro. of W. Mifflin*, 45 F.3d 780, 788 (3d Cir. 1995)). Because New Jersey state law claims, issues and healthcare public policies predominate, the Court should decline to exercise supplemental jurisdiction.

## CONCLUSION

Plaintiff NJBSC's motion to remand for lack of subject-matter jurisdiction, and for an award of attorney's fees and costs, should be granted.

Respectfully submitted,

**MAZIE SLATER KATZ & FREEMAN**

BY:   *s/ Eric D. Katz*

Dated:  June 7, 2019                         ERIC D. KATZ