**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
P: 973-228-9898
F: 973-228-0303
E: ekatz@mazeislater.com
*Attorneys for Plaintiff*

# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED HEALTHCARE INS. CO.; OXFORD HEALTH INS., INC.; OXFORD HEALTH PLANS (NJ), INC.; OXFORD HEALTH PLANS (NY), INC.; BENJAMIN MOORE & CO.; LOEWS HOTELS & RESORTS CORP.; WELLS FARGO CORP.; FAIRLEIGH DICKINSON UNIV.; UNITED HEALTHCARE SERVICES, INC.; UNITED HEALTHCARE SERVICES, LLC; AXA ASSISTANCE USA, INC.; and, ABC CORPS. 1-100,<br><br>    Defendants. | Civil Case No. 2:18-cv-15631<br><br>Before:  Susan D. Wigenton, U.S.D.J.<br>           Leda D. Wettre, U.S.M.J.<br><br>Return Date: Aug. 12, 2019<br><br>**REPLY CERTIFICATION OF DAVID M. ESTES IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND FOR LACK OF JURISDICTION, AND FOR FEES & COSTS** |

DAVID M. ESTES, of full age, hereby certifies as follows:

1.    I am an attorney-at-law of the State of New Jersey and an associate with the law firm of Mazie Slater Katz & Freeman, LLC, attorneys for Plaintiff North Jersey Brain & Spine Center ("NJBSC") in the above-captioned matter. I make this Certification in support of Plaintiff's

Motion to Remand for lack of subject-matter jurisdiction. This Certification is based on personal knowledge.

2.  A copy of an excerpt of the July 29, 2008 deposition of Susan M. Hayes, corporate designee of Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), defendant in *NJBSC v. Horizon*, No. BER-L-5751-07 (N.J. Law Div., filed 2007) is attached hereto as **Exhibit A**.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

>           */s/ David M. Estes*
>           DAVID M. ESTES

Dated: August 12, 2019

# Exhibit A

Page 1

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - BERGEN COUNTY
DOCKET NUMBER L-5751-07

- - - - - - - - - - -X

| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER, | DEPOSITION UPON ORAL EXAMINATION OF |
| Plaintiff, | SUSAN M. HAYES |
| vs. | |
| HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, | COPY |
| Defendant. | |

- - - - - - - - - - -X


COMPUTERIZED TRANSCRIPT of the stenographic notes of the proceedings in the above entitled matter as taken by DENISE L. SWEET, a Certified Court Reporter, Registered Professional Reporter, and Notary Public of the State of New Jersey, at the offices of MAZIE, SLATER, KATZ & FREEMAN, L.L.C., 103 Eisenhower Parkway, Roseland, New Jersey on Tuesday, July 29, 2008, at 10 o'clock in the forenoon.

KELLY McARDLE & ASSOCIATES
Court Reporting Services
2435 Route 34, B-222
Manasquan, New Jersey  08736
(732) 223-4344

```
 1
                A P P E A R A N C E S
 2
 3
    MAZIE, SLATER, KATZ & FREEMAN, L.L.C.
 4  103 Eisenhower Parkway
    Roseland, New Jersey 07068
 5  BY:  ERIC D. KATZ, ESQ.
    For the Plaintiff.
 6
 7
    WARDELL, CRAIG, ANNIN & BAXTER, L.L.P.
 8  41 Grove Street
    Haddonfield, New Jersey 08033
 9  BY:  EDWARD S. WARDELL, ESQ.
    For the Defendant.
10
11  Also Present:
    Horizon Blue Cross Blue Shield
12  BY:  SHERI HECHT LEONARD, ESQ.
13  Lee Goldberg
14
15
16
17
18
19
20
21
22       —
23
24
25
```

Page 5

1  S U S A N  M.  H A Y E S, being first duly sworn
2  according to law, testifies as follows:
3
4  (P-1 consisting of a notice to
5  produce was received and marked for
6  identification.)
7
8  EXAMINATION BY MR. KATZ:
9  Q    Good morning. My name is Eric Katz. I
10 represent the plaintiff, North Jersey Brain and
11 Spine Center, in this matter. I'm going to give you
12 a few instructions. But, before that, could you
13 please state your full name for the record?
14 A    Susan Mary Hayes.
15 Q    Okay. And are you employed by Horizon
16 Blue Cross Blue Shield?
17 A    Yes, I am.
18 Q    And what is your position there?
19 A    I'm a manager.
20 Q    Manager where?
21 A    Physician services.
22 Q    What does the physician services do?
23 A    It handles inquiries from physicians,
24 participating physicians, and we work with our legal
25 department and with the Department of Banking and

Page 41

```
 1       Q      Okay.  So, any appeals go to the home
 2   plan?
 3       A      Yes.
 4       Q      Do you have any understanding or in your
 5   work at Horizon, your employment at Horizon, of the
 6   Prompt Pay Laws, particularly the Hint Act, H-I-N-T?
 7       A      Yes.
 8       Q      Does the Hint Act apply to claims that
 9   involve home plans other than New Jersey?
10              MR. WARDELL:  I'll object to the
11   extent it calls for a legal conclusion.  You want to
12   ask her understanding?
13              MR. KATZ:  Her understanding.  I'm
14   not asking for a legal conclusion.
15       Q      Based on your application in the course
16   of your duties.
17       A      My understanding is that the Prompt Pay
18   regulations apply to any contracts, any insured
19   contracts written in the State of New Jersey.
20   Anything that is written outside the State of New
21   Jersey or anything that's administrative services
22   contract are not subject to those Prompt Pay
23   regulations.
24       Q      Okay.  So, your understanding is that the
25   Prompt Pay Laws apply to fully insured business in
```

```
 1   the State of New Jersey?
 2   A    Correct.
 3        Q    Okay.  Is it your understanding that the
 4   Prompt Pay regulations, including the Hint Act,
 5   apply to nonparticipating providers as well as
 6   participating providers?
 7   A    Absolutely.
 8        Q    Okay.  I'm done with -- by the way, if
 9   you need a break, this is not a marathon.  I can go,
10   Ed knows I can go for...
11             MR. WARDELL:  Adnauseam is the
12   legal phrase.
13   A    I'd like a little glass of water, if I could.
14             MR. KATZ:  Want to take a couple
15   minutes?
16             (At which time a brief recess was
17   taken.)
18             (P-4 consisting of a claim file for
19        Carmine Rubino was received and marked for
20        identification.)
21        Q    Okay.  Why don't we continue.  I've just
22   shown you P-4, which are documents from Carmine
23   Rubino, R-U-B-I-N-O.
24   A    Yes.
25        Q    Let me direct you to a couple of things.
```

Page 63

1   Cross Blue Shield of Michigan?
2   A    Yes.
3        Q    A letter inquiry from the
4   nonparticipating provider, though, could be
5   submitted by the practice to Horizon?
6   A    Yes.
7        Q    And that would then be forwarded to
8   Michigan for action?
9   A    We would investigate on their behalf and
10  provide them with a response based on pretty much
11  what's on this claim.
12       Q    What is your understanding of, in those
13  instances, where a nonparticipating provider renders
14  emergency services in the State of New Jersey, what
15  Horizon is obligated to pay for those services?
16            MR. WARDELL:   You mean for a
17  Horizon subscriber/insured?
18            MR. KATZ:   Correct.
19  A    If the member's contract is written in the
20  State of New Jersey and the provider is a
21  nonparticipating and the situation is truly
22  emergent, then we will pay up to charges in order to
23  not hold the member liable for their inability to
24  select a participating physician at that particular
25  venue.

Page 64

1   Q   So, assuming that the emergency services
2   are truly emergency services, Horizon would pay the
3   provider's billed amount so that the member has no
4   liability; correct?
5   A   Correct.
6   Q   And in such instances, Horizon will not
7   factor in whether or not those charges are
8   legitimate, usual and customary or what have you.
9   It will simply accept what the provider billed and
10  pay that amount?
11  A   For the most part, yes.
12  Q   Are there instances, though, because I'm
13  just listening to your qualification, you say for
14  the most part.  When wouldn't that be the case?
15  A   There may be instances where there is
16  inappropriate billing.
17  Q   You're talking about, like, a fraudulent
18  situation?
19  A   I don't want to use the word fraud, but
20  inappropriate billing.  And in those cases we would
21  not pay those services and certainly that would, we
22  would have documentation to support our position in
23  that.  But, for the most part, yes, we will pay
24  those, all those charges, up to charges.
25  Q   With regard to North Jersey Brain and

Page 65

```
 1    Spine, based on your experience at Horizon, how long
 2    have you been at Horizon?
 3    A    Two years.
 4         Q    Two years.  Where were you before that?
 5    A    A lot of different places.
 6         Q    Other health insurers?
 7    A    I worked for Union Trust Fund for a year.  I
 8    did some technical work designing benefit systems
 9    and I spent 21 years at UPS in their corporate
10    headquarters running their benefits department.
11         Q    Okay.  I just had a big case I settled
12    with UPS on benefits.  You were already gone.
13    A    Can't blame me for that one.
14         Q    Based on your two year's experience at
15    Horizon, have you ever had personal knowledge or
16    indirect knowledge of North Jersey Brain and Spine
17    Center either billing fraudulently or
18    inappropriately for the services that it rendered?
19    A    Personally, no.
20         Q    Indirectly have anything, have you heard
21    anything, has anyone ever told you anything that
22    North Jersey Brain and Spine Center was suspected of
23    billing inappropriately or fraudulently?
24    A    No.
25         Q    Now, how does Horizon determine, again,
```

```
 1    I'm paraphrasing your words, what is a true
 2    emergency for determining whether or not it will pay
 3    the provider's bill or not submitted by
 4    nonparticipating provider?
 5    A    Well, a situation has to be life threatening.
 6    And there is a little bit of a gray area in that we
 7    do consider the circumstances where the individual,
 8    and I can't remember the name of this phrase, but
 9    it's the common man theory or something like that,
10    where he feels that he truly is in a life
11    threatening situation and they would go to the
12    emergency room.  Classic case in point would be a
13    child who has a hundred and six degree fever.  Child
14    may have an ear infection, but the parents feel that
15    that's a bona fide emergency.  So, they would go to
16    the emergency room.  To me, that's emergent.
17    Q    Is there, is Horizon's determination as
18    to what constitutes an emergency driven by statute
19    or regulation or is it an internal policy?
20    A    We have certain diagnoses that are
21    recognizable, such as suspected heart attack is
22    something that would just go through the system.  If
23    it was a debatable issue, we are open to
24    interpretation and we're flexible.  More often than
25    not, we lean towards the side of the member.
```

```
 1      Q     To?
 2      A     To grant that condition.
 3      Q     And anything you just told me, is this
 4   actually a written policy at Horizon?
 5      A     We do have written policies.  I've paraphrased,
 6   but we do have policies on what the ER mandate is
 7   and how we should interpret it.
 8      Q     Now, let me clarify this.  Is Horizon, in
 9   those instances where Horizon is acting as either,
10   let's start with this as the gateway for a home
11   plan, that's other than Horizon, would these
12   procedures that govern payment to non-providers for
13   emergency services also be in effect?
14            MR. WARDELL:  I'll object to the
15   extent you're asking for any type of legal
16   conclusion, because I don't think any of those ER
17   rules apply to out of state plans, but if you're
18   talking internally in the processing, that's
19   different.
20            MR. KATZ:  Yeah, I'm not asking for
21   a legal conclusion.  We can fight that out some
22   other time.
23      Q     But, from your, from your experience, the
24   Horizon gateway to processing claims, if a claim is
25   submitted by a nonparticipating provider that
```

Page 68

```
 1   involves an emergency service that the home plan is
 2   on another plan, other than Horizon in another
 3   state, how are those claims to be handled?
 4   A    If it's not paid up to charges, it would have
 5   to be an appeal by the member.
 6        Q    Well, is there a policy that regardless
 7   of whatever the law, whatever Mr. Wardell just put
 8   his objection on the record to and the
 9   interpretation of law, I'm talking about actual
10   practice at Horizon. Is it the policy at Horizon
11   that if it's an emergency service rendered by a
12   nonparticipating doctor that it would be paid at
13   100 percent of the billed charge?
14   A    For contract in the State of New Jersey, yes.
15   For a contract written outside the State of New
16   Jersey, we'd have to adhere first to the member's
17   contract and, secondly, those contracts are not
18   subject to the ER mandate. So, it would be up to
19   the discretion of the home plan and the member's
20   contract.
21        Q    And Horizon, does Horizon have any input
22   or say as to how that, what the ultimate
23   determination would be or is that strictly up to the
24   home plan?
25   A    We submit the claims as we receive them and the
```