UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE CO., *et al.*,<br><br>Defendants. | Civil Action No.<br><br>18-15631 (SDW) (LDW)<br><br>**REPORT AND RECOMMENDATION** |

### LEDA DUNN WETTRE, United States Magistrate Judge

Before the Court is plaintiff North Jersey Brain & Spine Center's motion to remand this action to the Superior Court of New Jersey, Law Division, Essex County and for an award of fees and costs. (ECF Nos. 16, 24). Defendants oppose the motion. (ECF No. 23). The Honorable Susan D. Wigenton, U.S.D.J., referred the motion to the undersigned for a Report and Recommendation. This motion is decided without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. Having considered the parties' written submissions, and for good cause shown, the Court recommends that the motion to remand be **GRANTED** and the application for fees and costs be **DENIED**.

### I. BACKGROUND

Plaintiff North Jersey Brain & Spine Center ("NJBSC" or "plaintiff") is a medical practice in Oradell, New Jersey that specializes in neurosurgical procedures and treatment of the brain and spinal cord. (Am. Compl. ¶ 2, ECF No. 1). NJBSC alleges that at all relevant times, it was an out-of-network healthcare provider that provided emergency and pre-approved medically necessary services to 27 patients covered by healthcare plans sponsored, funded, operated, controlled, and/or

administered by defendants United Healthcare Insurance Company, Oxford Health Insurance, Inc., Oxford Health Plans (NJ), Inc., Oxford Health Plans (NY), Inc., United HealthCare Services, Inc., United HealthCare Services, LLC, AXA Assistance USA, Inc., Benjamin Moore & Co., Loews Hotels & Resorts Corp., Wells Fargo Corp., and Fairleigh Dickinson University (collectively, "defendants"). (*Id.* ¶¶ 3-14). NJBSC further alleges that it "engaged in regular communications and discussions with defendants and/or their agents regarding coverage, reimbursement and other issues," giving rise to a course of dealings between the parties. (*Id.* ¶ 36). According to NJBSC, defendants indicated by this course of dealings that they would "hold their insureds harmless and thus timely pay plaintiff its billed charges or UCR [usual, customary, and reasonable] amounts . . . in accordance with State Insurance Mandates" and that they would honor representations to NJBSC that the medical services rendered were pre-authorized or that no pre-authorization was required. (*Id.* ¶¶ 48-49). Instead, defendants allegedly "failed to issue proper reimbursement." (*Id.* ¶¶ 28, 33).

NJBSC filed suit in the Superior Court of New Jersey, Essex County, asserting state law claims for breach of implied contract, breach of the covenant of good faith and fair dealing, unjust enrichment and *quantum meruit*, promissory estoppel, negligent misrepresentation, tortious interference with economic advantage, violation of New Jersey regulations governing payment for emergency services, and violations of the New Jersey Healthcare Information Networks and Technologies Act and the New Jersey Health Claims Authorization, Processing and Payment Act. In an apparent attempt to keep the action in state court, the amended complaint specifies that: (1) "[a]ll the subject claims arise from state common, statutory and regulatory law, and not from any purported federal law or statute. Plaintiff has asserted direct claims and causes of action that are not predicated on an assignment of benefits from the patient"; (2) "[a]ll claims and causes of action

herein arise from and/or under one or more 'independent duties,' unfettered by any type of [Employee Retirement Income Security Act ("ERISA")] preemption"; (3) "the State Insurance Mandates and related causes of action pled herein are expressly 'saved' from ERISA preemption as these laws regulate insurance in the State of New Jersey"; and (4) "[t]his lawsuit addresses defendants' failure to provide the appropriate *amount* of coverage to the patient and defendants' failure to properly *reimburse* plaintiff for its services to that patient." (*Id.* ¶¶ 38-41). Nonetheless, defendants removed to this Court pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1331, arguing that NJBSC's state law claims are completely preempted by ERISA. (Notice of Removal ¶¶ 22-24, ECF No. 1). After settlement negotiations proved unfruitful, plaintiff moved to remand this action to state court. (ECF Nos. 11, 15, 16).

## II.   ANALYSIS

### A.   Legal Standards

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). But, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Here, defendants as the removing parties bear the burden of demonstrating that the case is properly before the federal court. *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). "Removal statutes are to be strictly construed, with all doubts to be resolved in favor of remand." *Brown v. JEVIC*, 575 F.3d 322, 326 (3d Cir. 2009).

The district court has subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A claim arises under federal law where the "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial

3

question of federal law." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 27-28 (1983). In certain cases, however, a complaint that presents only state law claims and no other bases for federal jurisdiction may nonetheless be removed to federal court pursuant to the doctrine of complete preemption. *See Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399 (3d Cir. 2004) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004)). Complete preemption "recognizes 'that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)); *see N.J. Carpenters & the Trustees Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014) ("[C]omplete preemption operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint." (quotation omitted)); *Lazorko v. Pennsylvania Hosp.*, 237 F.3d 242, 248 (3d Cir. 2000). "ERISA's civil enforcement mechanism, § 502(a), 'is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule,' and permits removal." *N.J. Carpenters*, 760 F.3d at 303 (quoting *Davila*, 542 U.S. at 209).

In analyzing whether plaintiff's state law claims are completely preempted by ERISA such that they may be removed to federal court, the Court applies the two-pronged *Pascack* test to determine whether: "(1) the plaintiff could have brought the claim under § 502(a); *and* (2) no other independent legal duty supports the plaintiff's claim." *Id.*; *Pascack*, 388 F.3d at 400. With respect to the first prong of the *Pascack* test – whether plaintiff could have brought its claim pursuant to ERISA § 502(a) – the court considers: "1(a) whether the plaintiff is the *type* of party that can bring a claim pursuant to Section 502(a)(1)(B), and 1(b) whether the *actual claim* that the

4

plaintiff asserts can be construed as a colorable claim for benefits pursuant to Section 502(a)(1)(B)." *Progressive Spine & Orthopaedics, LLC v. Anthem Blue Cross Blue Shield*, Civ. A. No. 17-536 (KM), 2017 WL 4011203, at *5 (D.N.J. Sept. 11, 2017).

With respect to the *Pascack* test's second prong, "a legal duty is 'independent' if it is not based on an obligation under an ERISA plan, or if it 'would exist whether or not an ERISA plan existed.'" *N.J. Carpenters*, 760 F.3d at 303 (quoting *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 950 (9th Cir. 2009)). As the *Pascack* test is "conjunctive, a state-law cause of action is completely preempted only if both of its prongs are satisfied." *Id.*

### B. NJBSC Could Not Have Brought Its Claims Under ERISA § 502(a)

#### 1. Standing

First, the Court considers whether plaintiff is the type of party that can bring a claim under § 502(a)(1)(B). That section provides that a "participant or beneficiary" may bring a claim pursuant to ERISA. 29 U.S.C. § 1132(a)(1). A "participant" is "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* § 1002(8). There is no dispute that plaintiff is neither a participant in the health plans administered by defendants nor a beneficiary thereof. Thus, NJBSC does not have standing to bring a claim under § 502(a) in its own right.

But, "[h]ealthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary." *North*

5

*Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015). As this Court has explained, many insurers "have responded [to this ruling] by adopting anti-assignment provisions" in the terms of their health plans. *Progressive Spine*, 2017 WL 4011203, at *1. The Third Circuit has confirmed that such anti-assignment provisions are generally enforceable. *Am. Orthopedic & Sports Med. v. Independence Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018). Thus, the Court cannot determine the validity of a purported assignment – and a healthcare provider's derivative standing based on that assignment – without considering the terms of the patient's health plan. If the relevant plan includes an anti-assignment provision,[1] it "renders the purported assignments ineffective" and "precludes a finding that a provider possesses derivative standing based on such an assignment." *Progressive Spine*, 2017 WL 4011203, at *8, *9.

The scanty motion record reveals that NJBSC has enforceable assignments for, and thus potentially derivative standing with respect to, only a few of the 27 patients listed in the amended complaint. As an initial matter, there is nothing in the record to establish assignments from 20 of the 27 patients[2] whose claims are at issue in this action such that NJBSC could have derivative standing to bring ERISA claims. *See North Jersey Brain & Spine Ctr. v. Aetna, Life Ins. Co.*, Civ. A. No. 15-1544 (MF) (WJM), 2017 WL 659012, at *4 (D.N.J. Feb. 17, 2017), *R&R adopted by*, 2017 WL 1055957 (D.N.J. Mar. 20, 2017) ("Aetna has failed to submit documents establishing assignments with respect to the other four patients involved in this case. Thus, Aetna has failed to

---

[1] Many United Healthcare plans do contain such provisions. *See, e.g.*, *Univ. Spine Ctr. v. United Healthcare*, Civ. A. No. 17-8575 (ES), 2018 WL 4089061, at *3 (D.N.J. Aug. 27, 2018) (granting motion to dismiss for lack of standing on the basis of United Healthcare anti-assignment provision); *East Coast Aesthetic Surgery, P.C. v. United Healthcare*, Civ. A. No. 17-13595 (WJM), 2018 WL 3201798, at *3 (D.N.J. June 29, 2018) (same); *Univ. Spine Ctr. v. United Healthcare*, Civ. A. No. 17-10978 (ES), 2018 WL 2332204, at *3 (D.N.J. May 23, 2018) (same).
[2] Specifically, patients identified as P.P., F.C., M.M., S.D.K., A.P., J.C., R. C-B., M.P., J.D., K.H., C.P., O.P., D.P., D.M., C.E., I.M., D.H., A.F., C.W., and A.P.

6

demonstrate, at least with respect to four of the patients, valid assignments that would confer standing on NJBSC to bring any claims it may possess as an assignee under § 502(a)."). The Court cannot infer from defendants' allegation in the removal petition that NJBSC received assignments from "one or more" of the 27 patients that plaintiff has derivative standing to pursue claims on behalf of them all. (Notice of Removal ¶ 11). Nor will the Court infer from the existence of some assignments that NJBSC has a regular practice of obtaining valid and complete assignments from all of its patients, including the 20 for whom the record is silent. *See Pascack*, 388 F.3d at 401 (noting that defendant "bore the burden of establishing the existence of an assignment" and holding that state law claims were not preempted by ERISA because "the record contains no evidence of an express assignment, whether oral or written, from [patients] to [plaintiff healthcare provider]"); *North Jersey Ctr. for Surgery, P.A. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, Civ. A. No. 07-4812 (HAA), 2008 WL 4371754, at *4 (D.N.J. Sept. 18, 2008) ("Vague references to a common practice of non-network providers and a purported assignment of benefits . . . fail to conclusively establish that [plaintiff] has a complete assignment of its patients' health insurance benefits. Consequently, the absence of evidence leaves this Court with grave doubt that Plaintiff would have standing to sue under ERISA. Such doubt augers in favor of remand."). Therefore, defendants have not demonstrated with respect to 20 of the 27 patients that plaintiff obtained derivative standing to bring ERISA claims on their behalf, thus precluding a finding that those patients' claims are preempted by ERISA such that they would be removable.

With respect to two of the remaining seven patients, P.B. and J.R., defendants ask the Court to infer the existence of valid assignments from two standardized HCFA-1500 health insurance claim forms NJBSC submitted to United Healthcare for reimbursement for services provided. (Notice of Removal, Exs. B, D). The standardized form includes Box 13, which asks if the insured

7

"authorize[s] payment of medical benefits to the undersigned physician or supplier for services described below" and Box 27, which asks "ACCEPT ASSIGNMENT? (For govt. claims, see back)"; NJBSC indicated "PATIENT SIGNATURE ON FILE" in Box 13 and checked "YES" in Box 27 on each claim form. (*Id.*). As the Court has previously held, however, it "is not convinced that . . . by marking box 27 'acceptance of assignment' on the Health Insurance Claim Form, Plaintiff has accepted an assignment," *N.J. Spinal Med. & Surgery PA v. IBEW Local 164*, Civ. A. No. 11-5493 (DMC), 2012 WL 1988708, at *2 (D.N.J. May 31, 2012), or that the patients in fact executed valid assignments.[3] The Court does not conclude, at this stage of the proceedings and on the record presented, that NJBSC obtained derivative standing with respect to patients P.B. and J.R.

Unlike the foregoing 22 patients, defendants have submitted five insurance assignment forms executed by patients W.M., M. Pe., M.S., N.D., and C. F-P. Those documents "assign to North Jersey Brain & Spine Center all payments for medical services rendered to myself or my dependents" and authorizing NJBSC "to appeal to my insurance company on my behalf." (Notice of Removal, Ex. F; Britto Cert. Exs. 4, 9, 19, 25, ECF Nos. 23-5, 23-10, 23-20, 23-26).[4] The Court

---

[3] Even if the Court were to accept the notion that annotations on a standardized health insurance claim form sufficiently establish a valid assignment conferring standing on NJBSC, defendants have not established the additional *Pascack* factors necessary for complete preemption and removal.

[4] The Notice of Removal attached only one assignment, signed by W.M. Defendants then supplemented the record with similarly worded assignments executed by patients M. Pe., M.S., N.D., and C. F-P. in their opposition to the remand motion. While plaintiff correctly points out that the Court cannot consider new grounds for removal that were not included in a Notice of Removal, the late-submitted assignment documents are substantially similar to the assignment defendants attached as an exhibit to the Notice of Removal and are sufficiently related to defendants' allegation that "one or more" of the patients at issue executed assignments that the Court will consider them in its analysis. *See MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 412 (3d Cir. 2015) ("While it may be permissible to add further detail to jurisdictional allegations, a defendant may not rely on an entirely new basis for jurisdiction not set forth in the removal petition.").

8

now looks to the relevant health plan documents to determine the validity of these purported assignments. The plans for patients M.S., N.D., and C.F-P. each include provisions stating: "This Certificate is not assignable by Group without our written consent. Any benefits under this Certificate are not assignable by any Member without Our written consent. In addition, This Agreement shall not confer any rights or obligations on third parties except as specifically provided herein." (Britto Cert., Ex. 5 at 73, Ex. 16 at 93, Ex. 20 at 93). There is nothing in the record to suggest that defendants have consented in writing to the three purported assignments. United Healthcare has argued, and other Courts in this District have found, that this precise language constitutes a "clear and unequivocal" anti-assignment provision which impedes a plaintiff healthcare provider from obtaining standing to pursue an ERISA claim. *Univ. Spine Ctr.*, 2018 WL 4089061, at \*3 (granting motion to dismiss for lack of standing based on anti-assignment language at issue here); *see also East Coast Aesthetic Surgery, P.C.*, 2018 WL 3201798, at \*2 (same). Defendants cannot now claim that this provision does not prohibit assignments by M.S., N.D., and C.F-P. in order to maintain federal jurisdiction. Additionally, as defendants failed to even address the validity of W.M.'s assignment in their opposition brief, much less submit health plan documents unquestionably within their custody and control to enable the Court to determine whether W.M.'s plan includes an anti-assignment provision, they have not met their burden to establish NJBSC's derivative standing with respect to W.M. Thus, even though these four patients executed assignment forms, NJBSC does not have derivative standing to bring ERISA claims on their behalf, again precluding a finding that those patients' claims are preempted by ERISA such that they would be removable.

That leaves M. Pe. as the only patient for whom plaintiff potentially has obtained derivative standing to bring an ERISA claim. But, regardless of whether there is one valid assignment at

9

issue or more, plaintiff explicitly pleads "direct claims and causes of action that are not predicated on an assignment of benefits from the patient," Am. Compl. ¶ 38, and "the mere existence of an assignment does not convert NJBSC's [direct] state law claim for breach of contract into a [derivative] claim to recover benefits under the terms of an ERISA plan." *North Jersey Brain & Spine Ctr.*, 2017 WL 659012, at *4; *see MHA, LLC v. Empire Healthchoice HMO, Inc.*, Civ. A. No. 17-6391 (SDW), 2018 WL 549641, at *3 n.3 (D.N.J. Jan. 25, 2018) (granting motion to remand and noting "[n]or does one assignment in a case involving thousands of patients alter this Court's analysis, particularly where MHA has chosen not to bring a claim as an assignee"); *Progressive Spine*, 2017 WL 4011203, at *9 (finding the first prong of the *Pascack* test was not satisfied and remanding action where plaintiff "explicitly disclaims any attempt to assert the rights of its patient, B.G. It purports to assert its own rights under theories of contract and quasi-contract. Those claims have some facial vulnerability, and may or may not have any validity as a matter of state law. But this Court cannot conclude, contrary to all appearances and [plaintiff's] own disclaimer, that [plaintiff] must 'really' be asserting the rights of its patient, B.G.").

### 2. Colorable Claim for Benefits

Even if plaintiff has standing with respect to a few patients, its claims are not colorable claims for benefits under § 502(a). Section 502(a) empowers a participant or beneficiary to sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Where a plaintiff "does not challenge the type, scope or provision of benefits under [an ERISA] healthcare plan," any "[d]isputes over the amount of reimbursement are not preempted by ERISA." *East Coast Advanced Plastic Surgery v. AmeriHealth*, Civ. A. No. 17-8409 (SDW), 2018 WL 1226104, at *3 (D.N.J. Mar. 9, 2018); *see also Thomas R. Peterson, M.D.*

10

*PC v. Cigna Health & Life Ins. Co.*, Civ. A. No. 18-4764 (SDW), 2018 WL 3586273, at *4 (D.N.J. July 25, 2018) ("ERISA does not pre-empt disputes over the amount of reimbursement."); *Emergency Physicians of St. Clare's v. United Health Care*, Civ. A. No. 14-404 (ES), 2014 WL 7404563, at *5 (D.N.J. Dec. 29, 2014) ("ERISA does not, however, preempt claims over the *amount* of coverage provided, which includes disputes over reimbursement.").

Here, plaintiff's claims are related to the amount of payment received, premised on implied agreements and representations that allegedly arose in the course of dealings between the parties, and not claims seeking coverage under a given health plan. *See* Am. Compl. ¶ 41 ("There is no dispute that defendants' plan provides coverage for the patients and claims . . . as defendants already issued partial payments."). The fact that defendants sent NJBSC provider remittances which reference the terms of certain patients' ERISA plans to explain their adjudication of the claims does not change the Court's analysis. Indeed, this Court has considered substantially similar allegations as those in the amended complaint and found that substantially similar breach of implied contract, breach of the covenant of good faith and fair dealing, unjust enrichment and *quantum meruit*, promissory estoppel, negligent misrepresentation, tortious interference with economic advantage, and New Jersey statutory claims are not colorable claims for benefits under an ERISA plan. *See MHA*, 2018 WL 549641, at *3 (finding claims by out-of-network healthcare provider "are not the type permissible under Section 502(a) because "MHA does not challenge the type, scope or provision of benefits under Defendants' healthcare plans. Rather, it seeks to assert rights as a third-party provider for payment"); *North Jersey Brain & Spine Ctr.*, 2017 WL 659012, at *4 ("Plaintiff does not contend that it is due additional monies under the patients' ERISA plans. Quite to the contrary, Plaintiff alleges that it is owed monies based on its alleged contract with Aetna, separate and apart from the plan. Thus, Plaintiff is not suing Aetna based on any purported

11

assignments from the patients of their rights under ERISA, but NJBSC's alleged rights under an independent contract with Aetna."). This Court finds the same here. Having determined that defendant has not established the first prong of the *Pascack* test, the Court need not reach the second prong. Plaintiff's state law claims are not preempted by ERISA, and this Court lacks subject matter jurisdiction to hear them.

### C.  Attorneys' Fees

In addition to remand, plaintiff requests an award of attorneys' fees pursuant to 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Although the growing trend in this District is remand of these types of healthcare provider reimbursement actions, the Court cannot say that defendants' removal was completely lacking an objectively reasonable basis. Thus, the Court recommends that plaintiff's request for attorneys' fees be denied. *See Small v. Blue Cross Blue Shield of Michigan*, Civ. A. No. 18-11601 (SDW), 2018 WL 5891692, at *1 (D.N.J. Nov. 9, 2018) (adopting Magistrate Judge Waldor's recommendation that fees should not be awarded in action unsuccessfully removed pursuant to ERISA); *Progressive Spine*, 2017 WL 4011203, at *10 (granting motion to remand but declining to award attorneys' fees associated with motion); *MedWell, LLC v. Cigna Healthcare of N.J., Inc.*, Civ. A. No. 13-3998 (FSH), 2013 WL 5533311, at *5 (D.N.J. Oct. 7, 2013) (same).

### III.  CONCLUSION

For the foregoing reasons, the Court recommends that plaintiff's motion to remand be **GRANTED** and the application for fees and costs be **DENIED**. The parties are hereby advised that, pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, they have 14 days after

being served with a copy of this Report and Recommendation to serve and file specific objections to the Honorable Susan D. Wigenton, U.S.D.J.

Dated:      November 25, 2019

*[signature]*

Hon. Leda Dunn Wettre
United States Magistrate Judge

Original:   Clerk of Court
cc:         Hon. Susan D. Wigenton, U.S.D.J.
            All parties